1    436.   On or about July 20, 2009, defendants SHAROPETROSIAN

2   and AIRAPETIAN, in a telephone conversation using coded language,

3   discussed whether AIRAPETIAN was interested in becoming a Thief-

4   in-Law, and SHAROPETROSIAN said they did not have to become

5   Thieves-in-Law to be financially strong.

6    437.   On or about August 19, 2009, defendant PETROSIAN, in

7   a telephone conversation using coded language, asked defendant

8   DARBINYAN if an unindicted co-conspirator's brother was a member

9   of Armenian Power, and DARBINYAN said no way.

10    438.   On or about August 28, 2009, defendant DARBINYAN, in

11   a telephone conversation using coded language, told an

12   incarcerated unindicted co-conspirator that DARBINYAN had been

13   validated by prison officials as an associate of the Mexican

14   Mafia because DARBINYAN controlled the prison yards when

15   DARBINYAN was incarcerated.

16    439.   On or about September 9, 2009, defendant

17   BILEZIKCHYAN, in a telephone conversation using coded language,

18   told defendant K. YERKANYAN that if an Armenian kidnapping victim

19   goes to the police regarding his kidnapping by Mexican Mafia

20   associates, all imprisoned Armenians would be in jeopardy, and

21   BILEZIKCHYAN told K. YERKANYAN that they should call defendants

22   DARBINYAN, H. KARAYAN, and O. TEROGANESYAN, and other Armenian

23   Power leaders, to discuss the issue.

24    440.   On or about September 9, 2009, defendant

25   BILEZIKCHYAN, in a telephone conversation using coded language,

26   discussed with defendant DARBINYAN an incident in which an

27   Armenian individual had been kidnapped by Mexican Mafia

28   associates, and BILEZIKCHYAN said that all incarcerated Armenians

1 would be in danger if the Armenian kidnapping victim got the

2 police involved, and DARBINYAN agreed.

3     441.  On or about October 3, 2009, defendant DARBINYAN, in

4 a telephone conversation using coded language, told defendant

5 Antonyan that another high-level Armenian organized crime figure

6 had called DARBINYAN and told DARBINYAN that he respected

7 DARBINYAN as a Thief-in-Law.

8     442.  On or about October 10, 2009, defendant DARBINYAN, in

9 a telephone conversation using coded language, told defendant

10 ZAKARYAN that DARBINYAN was going to take $2,000 from an

11 unspecified victim and that DARBINYAN had to pay $500 each to

12 four incarcerated Mexican Mafia members.

13     443.  On or about October 13, 2009, defendant BILEZIKCHYAN,

14 in a telephone conversation using coded language, told defendant

15 DARBINYAN that the westside belonged to a senior Mexican Mafia

16 member and that the senior Mexican Mafia member was a friend of

17 Armenians.

18     444.  On or about October 22, 2009, defendant BILEZIKCHYAN,

19 in a telephone conversation using coded language, told defendant

20 DARBINYAN that he had spoken to a recently imprisoned Mexican

21 Mafia member who told BILEZIKCHYAN that law enforcement officers

22 were listening to their telephone conversations, and BILEZIKCHYAN

23 told DARBINYAN that they had to change their telephone numbers as

24 soon as possible.

25     445.  On or about December 3, 2009, defendant BILEZIKCHYAN,

26 in a telephone conversation using coded language, told defendant

27 K. YERKANYAN that BILEZIKCHYAN was going to have lunch with a

28 Mexican Mafia member and others to discuss recent arrests of

1  three Armenian Power gang members and associates, including

2  DARBINYAN.

3       446.   On or about January 27, 2010, defendants E.

4  KHACHATRYAN and GAMBARYAN, and other members and associates of

5  Armenian Power, possessed a roster identifying Armenian Power

6  gang members.

7       All in violation of Title 18, United States Code, Section

8  1962(d).

1                    COUNT TWO

2              [18 U.S.C. § 1201(c)]

3   A.   OBJECT OF THE CONSPIRACY

4        Beginning on a date unknown to the Grand Jury, but no later

5   than on or about November 25, 2009, and continuing through on or

6   about December 29, 2009, in Los Angeles County, within the

7   Central District of California, and elsewhere, defendants PARAMAZ

8   BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka

9   "Parnamas Bileziktsian," aka "Bleziktsian Paramas"

10  ("BILEZIKCHYAN"), KARO YERKANYAN, aka "Guilty," aka "Gator," aka

11  "Kane" ("K. YERKANYAN"), HAYK KARAYAN, aka "Hayko," aka "Whisper"

12  ("H. KARAYAN"), ARAM PETROSIAN, aka "Tot," aka "Toto"

13  ("PETROSIAN"), OGANES TEROGANESYAN, aka "Hovo," aka "Hovik," aka

14  "Oganes Terognesyan" ("O. TEROGANESYAN"), and TIGRAN SARKISYAN,

15  aka "Tiko" ("SARKISYAN"), and others known and unknown to the

16  Grand Jury, conspired and agreed with each other to willfully and

17  unlawfully seize, confine, inveigle, kidnap, abduct, and carry

18  away victim G.A., and hold victim G.A. for ransom and reward and

19  otherwise, and willfully used a means, facility, and

20  instrumentality of interstate and foreign commerce in committing

21  and in furtherance of the commission of such offense, in

22  violation of Title 18, United States Code, Section 1201(a)(1).

23  B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

24       ACCOMPLISHED

25       The object of the conspiracy was to be accomplished, in

26  substance, as follows:

27       1.    Defendants BILEZIKCHYAN, K. YERKANYAN, PETROSIAN, and

28  O. TEROGANESYAN, SARKISYAN, and others known and unknown to the

                          104

1  Grand Jury, would devise a plan to seize, confine, inveigle,

2  kidnap, abduct, and carry away victim G.A. from the Downtown

3  district of Los Angeles, California.

4      2.    Defendants BILEZIKCHYAN, K. YERKANYAN, PETROSIAN, and

5  SARKISYAN, and others known and unknown to the Grand Jury, would

6  seize, confine, inveigle, kidnap, abduct, and carry away victim

7  G.A. to MR Auto Body Collision, located in Los Angeles,

8  California.

9      3.    Defendants BILEZIKCHYAN, K. YERKANYAN, PETROSIAN, and

10  O. TEROGANESYAN, and others known and unknown to the Grand Jury,

11  would threaten victim G.A. with death and bodily harm if victim

12  G.A. did not pay and agree to pay a large sum of money for his

13  release.

14      4.    Defendants BILEZIKCHYAN, K. YERKANYAN, H. KARAYAN,

15  PETROSIAN, O. TEROGANESYAN, and SARKISYAN, and others known and

16  unknown to the Grand Jury, would use multiple cellular telephones

17  to communicate during the course of and in furtherance of the

18  kidnapping of victim G.A.

19  C.    OVERT ACTS

20      In furtherance of the conspiracy and to accomplish the

21  object of the conspiracy, defendants BILEZIKCHYAN, K. YERKANYAN,

22  H. KARAYAN, PETROSIAN, O. TEROGANESYAN, and SARKISYAN, and others

23  known and unknown to the Grand Jury, committed and caused to be

24  committed various overt acts on or about the following dates,

25  within the Central District of California, and elsewhere,

26  including, but not limited to, the following:

27      1.    On or about November 25, 2009, defendant

28  BILEZIKCHYAN, in a telephone conversation using coded language,

1  told defendant SARKISYAN to pick BILEZIKCHYAN up to drive him to

2  the Downtown district of Los Angeles, California.

3      2.    On or about November 25, 2009, defendant

4  BILEZIKCHYAN, in a telephone conversation using coded language,

5  told defendant K. YERKANYAN that BILEZIKCHYAN was headed to

6  downtown Los Angeles with defendant SARKISYAN to kidnap victim

7  G.A., and BILEZIKCHYAN asked K. YERKANYAN to contact defendants

8  H. KARAYAN and PETROSIAN to advise them to be prepared to assist

9  in kidnapping victim G.A., and K. YERKANYAN agreed to do so.

10     3.    On or about November 25, 2009, defendant

11 BILEZIKCHYAN, in a telephone conversation using coded language,

12 told defendant K. YERKANYAN to talk to defendant PETROSIAN about

13 where they should take victim G.A. after they seize him, and K.

14 YERKANYAN said he would do so.

15     4.    On or about November 25, 2009, defendant

16 BILEZIKCHYAN, in a telephone conversation using coded language,

17 told defendant O. TEROGANESYAN that he would be at O.

18 TEROGANESYAN's auto body shop, MR Auto Body Collision, in Los

19 Angeles, California, in about an hour, and O. TEROGANESYAN told

20 BILEZIKCHYAN he would be there for sure.

21     5.    On or about November 25, 2009, defendants

22 BILEZIKCHYAN, K. YERKANYAN, PETROSIAN, and SARKISYAN, and others

23 known and unknown to the Grand Jury, seized, confined, inveigled,

24 kidnapped, abducted, and carried away victim G.A. to MR Auto Body

25 Collision, an auto body shop owned by defendant O. TEROGANESYAN

26 in Los Angeles, California.

27

28

6.    On or about November 25, 2009, defendants BILEZIKCHYAN and SARKISYAN carried out a ruse phone call designed to instill the fear of death in victim G.A.

7.    On or about November 25, 2009, defendants BILEZIKCHYAN, K. YERKANYAN, PETROSIAN, and SARKISYAN confronted victim G.A. while some of them were wearing masks with the intention of instilling the fear of death in victim G.A.

8.    On or about November 25, 2009, defendant K. YERKANYAN, in a telephone conversation using coded language, told defendant H. KARAYAN that he and others had taken victim G.A., who was with them, and H. KARAYAN offered to help.

9.    On or about November 25, 2009, defendant BILEZIKCHYAN told victim G.A. that victim G.A. had to pay BILEZIKCHYAN $100,000 to be released.

10.    On or about November 25, 2009, defendant BILEZIKCHYAN told victim G.A. that victim G.A. would need to pay BILEZIKCHYAN $400,000 to avoid future kidnappings.

11.    On or about November 25, 2009, defendants K. YERKANYAN, PETROSIAN, and others known and unknown to the Grand Jury, took victim G.A. away from defendant O. TEROGANESYAN's auto body shop to collect money that was being paid to secure victim G.A.'s release.

12.    On or about November 25, 2009, defendant PETROSIAN, in a telephone conversation using coded language, told defendant BILEZIKCHYAN that PETROSIAN was sitting outside victim G.A.'s building waiting for victim G.A. to bring money to him.

13.   On or about November 26, 2009, defendant BILEZIKCHYAN, in a telephone conversation using coded language, discussed with defendant K. YERKANYAN splitting $200,000 in proceeds from the kidnapping of victim G.A.

14.   On or about December 24, 2009, defendant H. KARAYAN, in a telephone conversation using coded language, told defendant BILEZIKCHYAN that victim G.A. had a lot of gold hidden, and BILEZIKCHYAN told H. KARAYAN to tell victim G.A. that Monday was the last day to pay the money owed in connection with the kidnapping.

## COUNT THREE

### [18 U.S.C. §§ 1201(a)(1), 2]

On or about November 25, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants PARAMAZ BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka "Parnamas Bileziktsian," aka "Bleziktsian Paramas," KARO YERKANYAN, aka "Guilty," aka "Gator," aka "Kane," HAYK KARAYAN, aka "Hayko," aka "Whisper," ARAM PETROSIAN, aka "Tot," aka "Toto," OGANES TEROGANESYAN, aka "Hovo," aka "Hovik," aka "Oganes Terognesyan," and TIGRAN SARKISYAN, aka "Tiko,"  and others known and unknown to the Grand Jury, willfully and unlawfully seized, confined, inveigled, kidnapped, abducted, and carried away victim G.A., and held victim G.A. for ransom and reward and otherwise, and used a means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of the commission of such offense, and aided, abetted, counseled, commanded, induced, and procured the commission of such offense.

1  
2  

COUNT FOUR

[18 U.S.C. § 1951(a)]

3  A.  OBJECT OF THE CONSPIRACY

4       Beginning on a date unknown to the Grand Jury, but no later
5  than on or about June 27, 2009, and continuing through in or
6  around December 2009, in Los Angeles County, within the Central
7  District of California, and elsewhere, defendants MHER DARBINYAN,
8  also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little
9  Mike," aka "Capone," aka "Caps," aka "Maher" ("DARBINYAN"), ARMAN
10  SHAROPETROSIAN, aka "Horse," aka "Dzi" ("SHAROPETROSIAN"), EMIL
11  AIRAPETIAN, aka "Clever," aka "Emo" ("AIRAPETIAN"), and LUSINE
12  OGANDGANYAN, aka "Lusine Ogandjanian," aka "Luso" ("L.
13  OGANDGANYAN"), and others known and unknown to the Grand Jury,
14  conspired and agreed with each other to knowingly obstruct,
15  delay, and affect commerce and the movement of any article or
16  commodity in commerce by extortion, and threatened physical
17  violence to victim M.M. in furtherance of a plan and purpose to
18  obstruct, delay, and affect commerce and the movement of any
19  article or commodity in commerce by extortion, in violation of
20  Title 18, United States Code, Section 1951(a).

21  B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
22      ACCOMPLISHED

23       The object of the conspiracy was to be accomplished, in
24  substance, as follows:

25       1.    Defendants DARBINYAN and SHAROPETROSIAN would devise
26  a plan to extort money from victim M.M.

27  
28  

110

1       2.    Defendants DARBINYAN, SHAROPETROSIAN, AIRAPETIAN, and

2 L. OGANDGANYAN would threaten victim M.M. with death and serious

3 bodily harm to victim M.M. and victim M.M.'s family if victim

4 M.M. did not pay a large sum of money to DARBINYAN,

5 SHAROPETROSIAN, AIRAPETIAN, and L. OGANDGANYAN, and others known

6 and unknown to the Grand Jury.

7       3.    Defendants DARBINYAN, SHAROPETROSIAN, AIRAPETIAN, and

8 L. OGANDGANYAN would contact victim M.M. and instruct him to pay

9 specific amounts of money via cash or wire transfers and specify

10 the date, time, and location for the payment of the money.

11 C.   OVERT ACTS

12      In furtherance of the conspiracy and to accomplish the

13 object of the conspiracy, defendants DARBINYAN, SHAROPETROSIAN,

14 AIRAPETIAN, and L. OGANDGANYAN, and others known and unknown to

15 the Grand Jury, committed and caused to be committed various

16 overt acts on or about the following dates, within the Central

17 District of California, and elsewhere, including, but not limited

18 to, the following:

19       1.    On or about June 27, 2009, defendant SHAROPETROSIAN,

20 in a telephone conversation using coded language, discussed with

21 defendant DARBINYAN seizing and holding victim M.M. until victim

22 M.M.'s father brought them money.

23       2.    On or about June 29, 2009, defendant SHAROPETROSIAN

24 initiated a three-way call between defendant DARBINYAN and victim

25 M.M. and threatened victim M.M. with bodily harm if he did not

26 pay money to SHAROPETROSIAN and DARBINYAN.

27

28

3.    On or about June 30, 2009, defendant DARBINYAN, in a telephone conversation using coded language, told defendant SHAROPETROSIAN that DARBINYAN had met with victim M.M. and threatened him with physical violence if he did not pay money, and SHAROPETROSIAN said victim M.M. should pay $70,000 to defendant L. OGANDGANYAN and additional money to them.

4.    On or about July 3, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, told defendant DARBINYAN to threaten victim M.M. with physical harm if victim M.M. did not pay money to SHAROPETROSIAN and DARBINYAN.

5.    On or about July 4, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, told defendant DARBINYAN to inform victim M.M. that victim M.M. would be kidnapped for three months if he did not pay money to SHAROPETROSIAN.

6.    On or about July 4, 2009, defendant SHAROPETROSIAN initiated a three-way call with defendant DARBINYAN and victim M.M., and SHAROPETROSIAN and DARBINYAN told victim M.M. that they would kidnap victim M.M. if victim M.M. and his family did not pay money to SHAROPETROSIAN, DARBINYAN, and defendant L. OGANDGANYAN.

7.    On or about July 6, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, discussed with defendant DARBINYAN how much money they intended to obtain from victim M.M. that day using threats of physical harm.

8.    On or about July 6, 2009, defendant DARBINYAN, in a telephone conversation using coded language, told victim M.M.

1 | that DARBINYAN would hurt victim M.M. if victim M.M. did not pay
2 | him money.

3 |       9.    On or about July 8, 2009, defendant DARBINYAN, in a
4 | telephone conversation using coded language, demanded money from
5 | victim M.M.

6 |      10.    On or about July 9, 2009, defendants DARBINYAN and
7 | SHAROPETROSIAN, in a telephone conversation using coded language,
8 | discussed how to obtain money from victim M.M., and
9 | SHAROPETROSIAN said that some of the money would go to defendant
10 | L. OGANDGANYAN.

11 |      11.    On or about August 30, 2009, defendant
12 | SHAROPETROSIAN, using coded language on the telephone, demanded
13 | money from victim M.M.

14 |      12.    On or about August 31, 2009, defendant
15 | SHAROPETROSIAN, in a telephone conversation using coded language,
16 | instructed victim M.M. to meet an unindicted co-conspirator to
17 | deliver money to her under threat of physical harm.

18 |      13.    On or about September 3, 2009, defendant
19 | SHAROPETROSIAN, in a telephone conversation using coded language,
20 | demanded $100,000 from victim M.M. under threat of physical harm.

21 |      14.    On or about September 4, 2009, defendant
22 | SHAROPETROSIAN, in a telephone conversation using coded language,
23 | told victim M.M. that victim M.M. would be killed.

24 |      15.    On or about September 11, 2009, defendants
25 | SHAROPETROSIAN and L. OGANDGANYAN, in a telephone conversation
26 | using coded language, spoke with victim M.M. and demanded money
27 | from victim M.M. under threat of physical harm.

28 |

1     16.   On or about October 16, 2009, in response to threats

2  of violence and physical harm from defendants DARBINYAN,

3  SHAROPETROSIAN, AIRAPETIAN, and L. OGANDGANYAN, and others,

4  victim M.M. wired approximately $1,000 using Moneygram.

5     17.   On or about October 20, 2009, in response to threats

6  of violence and physical harm from defendants DARBINYAN,

7  SHAROPETROSIAN, AIRAPETIAN, and L. OGANDGANYAN, and others,

8  victim M.M. wired approximately $1,500 using Moneygram.

9     18.   On or about October 28, 2009, defendant

10  SHAROPETROSIAN, in a telephone conversation using coded language,

11  instructed victim M.M. to make deposits into certain bank

12  accounts and to use either Western Union or Moneygram to send

13  money to SHAROPETROSIAN and his co-conspirators under threat of

14  violence.

15     19.   On or about October 29, 2009, defendant AIRAPETIAN,

16  in a telephone conversation using coded language, demanded money

17  from victim M.M. and threatened victim M.M. with violence if

18  victim M.M. did not pay the money.

19     20.   On or about October 29, 2009, defendant AIRAPETIAN,

20  in a telephone conversation using coded language, arranged a

21  meeting with victim M.M. for the purpose of obtaining money from

22  victim M.M., and, later that day, obtained approximately $1,900

23  from victim M.M. under threat of physical harm.

24     21.   On or about October 29, 2009, defendant AIRAPETIAN,

25  in a telephone conversation using coded language, demanded

26  $10,000 from victim M.M. and threatened to disfigure victim M.M.

27  if he did not pay.

28

22.    On or about October 30, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, instructed victim M.M. to make deposits into particular bank accounts under threat of physical harm.

23.    On or about October 30, 2009, in response to threats of violence and physical harm from defendants DARBINYAN, SHAROPETROSIAN, AIRAPETIAN, and L. OGANDGANYAN, and others, victim M.M. wired over $1,500 using Western Union.

24.    On or about October 31, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, demanded $2,000 from victim M.M.

26.    On or about November 1, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, demanded $10,000 from victim M.M.

27.    On or about November 2, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, demanded that victim M.M. take $1,000 to an unindicted co-conspirator that night.

28.    On or about November 2, 2009, victim M.M. paid $500 to an unindicted co-conspirator.

29.    On or about November 2, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language, told victim M.M. that SHAROPETROSIAN would slaughter victim M.M. if victim M.M. did not deposit money as directed by SHAROPETROSIAN.

30.    On or about November 4, 2009, defendant SHAROPETROSIAN, in a telephone conversation using coded language,

1  demanded $2,500 in cash from victim M.M. and said he would send

2  someone over to pick up the money from victim M.M.

3      31.    On or about November 4, 2009, an unindicted co-

4  conspirator known to the Grand Jury picked up $2,000 from victim

5  M.M.

6      32.    On or about November 5, 2009, defendant

7  SHAROPETROSIAN, in a telephone conversation using coded language,

8  asked victim M.M. when victim M.M. would be able to obtain money.

9      33.    On or about November 6, 2009, defendant

10  SHAROPETROSIAN, in a telephone conversation using coded language,

11  asked victim M.M. whether victim M.M. had sent the money demanded

12  by SHAROPETROSIAN under threat of physical harm using Western

13  Union or Moneygram.

14      34.    On or about November 12, 2009, defendant L.

15  OGANDGANYAN, and others known and unknown to the Grand Jury, met

16  with victim M.M. and demanded money from victim M.M.

17      35.    On or about November 19, 2009, defendant L.

18  OGANDGANYAN, in a telephone conversation using coded language,

19  told victim M.M. that victim M.M. had to pay her money under

20  threat of physical harm.

21      36.    On or about November 21, 2009, defendant L.

22  OGANDGANYAN, using coded language on the telephone, threatened to

23  kill victim M.M.'s family if victim M.M. did not pay money to L.

24  OGANDGANYAN.

25

26

27

28

COUNT FIVE

[18 U.S.C. §§ 1951(a), 2]

Beginning on a date unknown to the Grand Jury, but no later than on or about June 27, 2009, and continuing through in or around December 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher," ARMAN SHAROPETROSIAN, aka "Horse," aka "Dzi," EMIL AIRAPETIAN, aka "Clever," aka "Emo," and LUSINE OGANDGANYAN, aka "Lusine Ogandjianian," aka "Luso," and others known and unknown to the Grand Jury, knowingly obstructed, delayed, and affected commerce and the movement of any article or commodity in commerce by extortion, and threatened physical violence to victim M.M. in furtherance of a plan to obstruct, delay, and affect commerce and the movement of any article or commodity in commerce by extortion, and aided, abetted, counseled, commanded, induced, and procured the commission of such offense.

1                 COUNTS SIX THROUGH TWENTY-TWO

2                     [18 U.S.C. § 1344]

3 A.   INTRODUCTORY ALLEGATIONS

4     1.     At all times pertinent to this Indictment, the

5 deposits of Bank of America, Citibank, and JP Morgan Chase Bank

6 were federally insured.

7 B.   THE FRAUDULENT SCHEME

8     2.     Beginning in or around July 2008, and continuing

9 through on or about December 15, 2010, in Los Angeles and Orange

10 Counties, within the Central District of California, and

11 elsewhere, defendants MHER DARBINYAN, also known as ("aka")

12 "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone,"

13 aka "Caps," aka "Maher" ("DARBINYAN"), ARMAN TANGABEKYAN, aka

14 "Spito," aka "Spitak," aka "Villager," aka "Thick Neck," aka

15 "Armancho" ("TANGABEKYAN"), KAREN MARKOSIAN, aka "Kar," aka

16 "Garen" ("MARKOSIAN"), VAHE MNATSAKANYAN, aka "V," aka "Vahik"

17 ("MNATSAKANYAN"), ARMANDO MORENO, aka "Mando," aka "Monkey," aka

18 "Blackie" ("MORENO"), LUSINE OGANDGANYAN, aka "Lusine

19 Ogandjanian," aka "Luso" ("L. OGANDGANYAN"), GUSTAVO ORTEGA, aka

20 "Bam Bam," aka "Bams," aka "Gus" ("ORTEGA"), HAGOP YAMALYAN, aka

21 "Hago" ("YAMALYAN"), MANUK TERZYAN, aka "Max" ("TERZYAN"), KAREN

22 HESHAM SAMAWI, aka "Karen Hesham" ("SAMAWI"), JULIO CESAR RIVAS,

23 aka "July," aka "Biggie," aka "Big Boy" ("RIVAS"), VARTAN

24 AVEDISSIAN, aka "Vardan," "aka "Voicebox" ("AVEDISSIAN"), JOSEPH

25 MARES ("MARES"), DEBRA MAY-LAWSON, aka "Sugar" ("MAY-LAWSON"),

26 RAFAEL ROGER ZENDEJAS ("ZENDEJAS"), STEVEN WILSON, aka "Stutters"

27 ("WILSON"), FNU LNU, aka "Musho" ("MUSHO"), and FNU LNU, aka

28

1   "David Petrosov" ("PETROSOV"), together with others known and

2   unknown to the Grand Jury, knowingly and with intent to defraud,

3   devised, executed, and attempted to execute a scheme to defraud

4   Bank of America, Citibank, JP Morgan Chase Bank, and other

5   financial institutions as to material matters, and to obtain

6   money and property from Bank of America, Citibank, JP Morgan

7   Chase Bank, and other financial institutions by means of material

8   false and fraudulent pretenses, representations, and promises,

9   and the concealment of material facts.

10        3.    The fraudulent scheme operated, in substance, in the

11   following manner:

12             a.  Defendants DARBINYAN, TANGABEKYAN, MARKOSIAN,

13   MNATSAKANYAN, L. OGANDGANYAN, and YAMALYAN, and other co-

14   schemers, obtained bank account information belonging to victim-

15   account owners, including their names, personal identifying

16   information, and victim-account values, without the victim-

17   account owners' consent, knowledge, or authorization.

18             b.  Defendant DARBINYAN, TANGABEKYAN, MARKOSIAN, and

19   L. OGANDGANYAN, and other co-schemers, transferred money from the

20   victim-account owners' accounts and deposited it into other

21   accounts controlled by the co-schemers, thereby depleting the

22   victim-accounts.

23             c.  Defendants DARBINYAN, TANGABEKYAN, MARKOSIAN,

24   MNATSAKANYAN, MORENO, L. OGANDGANYAN, ORTEGA, YAMALYAN, TERZYAN,

25   SAMAWI, RIVAS, AVEDISSIAN, MARES, MAY-LAWSON, ZENDEJAS, WILSON,

26   and PETROSOV, and other co-schemers, prepared, forged, and

27   obtained fraudulent checks corresponding to the victim-accounts

28

1  without the victim-account owners' consent, knowledge, or

2  authorization.

3          d.  Defendants DARBINYAN, TANGABEKYAN, MARKOSIAN,

4  MNATSAKANYAN, MORENO, L. OGANDGANYAN, ORTEGA, YAMALYAN, TERZYAN,

5  SAMAWI, RIVAS, AVEDISSIAN, MARES, MAY-LAWSON, ZENDEJAS, WILSON,

6  and PETROSOV, and other co-schemers, cashed and deposited, and

7  attempted to cash and deposit, fraudulent checks drawn on the

8  victim-accounts without the victim-account owners' consent,

9  knowledge, or authorization.

10          e.  Defendants DARBINYAN, TERZYAN, ORTEGA, and RIVAS,

11  and other co-schemers, drove and transported other co-schemers

12  for purposes of cashing and depositing, and attempting to cash

13  and deposit, fraudulent checks for victim-accounts without the

14  victim-account owners' consent, knowledge, or authorization.

15          f.  Defendants DARBINYAN, TANGABEKYAN, MARKOSIAN,

16  MNATSAKANYAN, and L. OGANDGANYAN, and other co-schemers, tracked

17  the victim-accounts to determine if money had been successfully

18  drawn from the victim-accounts.

19          g.  Defendants DARBINYAN, TANGABEKYAN, MARKOSIAN,

20  MNATSAKANYAN, MORENO, L. OGANDGANYAN, ORTEGA, YAMALYAN, TERZYAN,

21  SAMAWI, RIVAS, AVEDISSIAN, MARES, MAY-LAWSON, ZENDEJAS, WILSON,

22  and PETROSOV, and other co-schemers, distributed proceeds from

23  the fraudulent bank fraud scheme amongst themselves.

24

25

26

27

28

C.   THE EXECUTION OF THE SCHEME

    4.    On or about the following dates, within the Central District of California, and elsewhere, defendants DARBINYAN, TANGABEKYAN, MARKOSIAN, MNATSAKANYAN, MORENO, L. OGANDGANYAN, ORTEGA, YAMALYAN, TERZYAN, SAMAWI, RIVAS, AVEDISSIAN, MARES, MAY-LAWSON, ZENDEJAS, WILSON, MUSHO, and PETROSOV, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following acts, each of which constituted an execution and attempted execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|-------|------|-----|
| SIX | 1/26/09 | Cashing of check number 3439, made payable to "Rafael Zendejas" in the amount of $10, drawn on Bank of America account number xxxxx-42953, in the name of victim P.J.C. |
| SEVEN | 1/26/09 | Deposit of check number 3442, made payable to "Joseph Mares" in the amount of $15, drawn on Bank of America account number xxxxx-42953, in the name of victim P.J.C. |
| EIGHT | 1/28/09 | Cashing of check number 3438, made payable to "Debra Jane May Lawson" in the amount of $5,600, and check number 3443, made payable to "Debra Jane May-Lawson" in the amount of $5,600, both drawn on Bank of America account number xxxxx-42953, in the name of victim P.J.C. |
| NINE | 1/28/09 | Submission of check number 3444, made payable to "Rafael Roger Zendejas" in the amount of $5,900, drawn on Bank of America account number xxxxx-42953, in the name of victim P.J.C. |
| TEN | 3/9/09 | Transfer of $45,000 from Bank of America account number xxxxx-68791, a trust account in the name of victim G.F., to Bank of America account number xxxxx-40707, a checking account in the name of victim G.F. |

| ELEVEN | 3/17/09 | Deposit of check number 1462, made payable to "Karen Hesham" in the amount of $26,400, drawn on Bank of America account number xxxxx-40707, in the name of victim G.F. |
| TWELVE | 3/18/09 | Deposit of check number 1463, made payable to "Karen Hesham" in the amount of $38,000, drawn on Bank of America account number xxxxx-40707, in the name of victim G.F. |
| THIRTEEN | 3/19/09 | Transfer of $40,000 from Bank of America account number xxxxx-68791, a trust account in the name of victim G.F., to Bank of America account number xxxxx-40707, a checking account in the name of victim G.F. |
| FOURTEEN | 3/30/09 | Cashing of check number 304, made payable to "Steven A Wilson" in the amount of $4,500, drawn on Bank of America account number xxxxx-13899, in the name of victim Y.G. |
| FIFTEEN | 3/30/09 | Cashing of check number 305, made payable to "Joseph Mares" in the amount of $5,300, drawn on Bank of America account number xxxxx-13899, in the name of victim Y.G. |
| SIXTEEN | 3/30/09 | Cashing of check number 306, made payable to "Joseph Mares" in the amount of $5,000, drawn on Bank of America account number xxxxx-13899, in the name of victim Y.G. |
| SEVENTEEN | 4/14/09 | Deposit of check number 2386, made payable to "RZ Diginet" in the amount of $28,357.00, drawn on Bank of America account number XXXXX-14509, in the names of victims F.D. and M.D. |
| EIGHTEEN | 4/14/09 | Attempted cashing and deposit of check number 2387, made payable to "David Petrosov" in the amount of $74,350.09, drawn on Bank of America account number XXXXX-14509, in the names of victims F.D. and M.D. |
| NINETEEN | 4/16/09 | Deposit of check number 1459, made payable to "Ruzanna Hakobyan" in the amount of $135,200, drawn on Citibank account number xxxx-7159, in the name of victim L.R. |

| TWENTY | 6/21/09 | Acquisition of balance and recent account activity for JP Morgan Chase Bank account number xxxxx-81458, in the name of victim R.M. |
| TWENTY-ONE | 6/22/09 | Acquisition of balance and recent account activity for JP Morgan Chase Bank account number xxxxx-94403, in the name of victims J.D. and M.D. |
| TWENTY-TWO | 6/22/09 | Acquisition of balance and recent account activity for JP Morgan Chase Bank account number xxxxx-57257, in the name of victim R.T. |

123

1                 COUNTS TWENTY-THREE THROUGH THIRTY-SEVEN

2                       [18 U.S.C. §§ 1028A(a)(1), 2]

3        On or about the dates specified below, in Los Angeles and

4   Orange Counties, within the Central District of California, and

5   elsewhere, the defendants named below, while aiding and abetting

6   each other, and together with others known and unknown to the

7   Grand Jury, knowingly transferred, possessed, and used, and

8   willfully caused to be transferred, possessed, and used, without

9   lawful authority, a means of identification of another person, as

10  specified below, during and in relation to Bank Fraud, a felony

11  violation of Title 18, United States Code, Section 1344, as

12  charged in Counts Six through Twenty-Two of this Indictment:

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|-------|------|--------------|-------------------------|
| TWENTY-THREE | 1/26/09 | MHER DARBINYAN, aka "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher" ("DARBINYAN"); GUSTAVO ORTEGA, aka "Bam Bam," aka "Bams," aka "Gus" ("ORTEGA"); JOSEPH MARES ("MARES") | Name, Account Number, and Signature of victim M.A. |
| TWENTY-FOUR | 1/26/09 | DARBINYAN; ORTEGA; RAFAEL ROGER ZENDEJAS ("ZENDEJAS") | Name, Account Number, and Signature of victim M.A. |

26

27

28

                              124

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| TWENTY-FIVE | 1/28/09 | DARBINYAN;<br>ORTEGA;<br>MANUK TERZYAN,<br>aka "Max"<br>("TERZYAN");<br>JULIO CESAR RIVAS,<br>aka "July,"<br>aka "Biggie,"<br>aka "Big Boy";<br>ZENDEJAS | Name, Account Number, and Signature of victim M.A. |
| TWENTY-SIX | 1/28/09 | DARBINYAN;<br>ORTEGA;<br>TERZYAN;<br>DEBRA MAY-LAWSON,<br>aka "Sugar" | Name, Account Number, and Signature of victim M.A. |
| TWENTY-SEVEN | 3/17/09 | DARBINYAN;<br>ARMAN TANGABEKYAN,<br>aka "Spito,"<br>aka "Spitak,"<br>aka "Villager,"<br>aka "Thick Neck,"<br>aka "Armancho"<br>("TANGABEKYAN");<br>VAHE MNATSAKANYAN,<br>aka "V,"<br>aka "Vahik"<br>("MNATSAKANYAN");<br>ARMANDO MORENO,<br>aka "Mando,"<br>aka "Monkey,"<br>aka "Blackie"<br>("MORENO");<br>TERZYAN;<br>KAREN HESHAM SAMAWI,<br>aka "Karen Hesham"<br>("SAMAWI");<br>VARTAN AVEDISSIAN,<br>aka "Vardan,"<br>"aka "Voicebox"<br>("AVEDISSIAN") | Name, Account Number, and Signature of victim G.F. |
| TWENTY-EIGHT | 3/18/09 | DARBINYAN;<br>TANGABEKYAN;<br>MNATSAKANYAN;<br>MORENO;<br>TERZYAN;<br>SAMAWI;<br>AVEDISSIAN | Name, Account Number, and Signature of victim G.F. |

125

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| TWENTY-NINE | 3/30/09 | DARBINYAN;<br>ORTEGA;<br>TERZYAN;<br>MARES;<br>STEVEN WILSON,<br>aka "Stutters"<br>("WILSON") | Name, Account Number, and Signature of victim Y.G. |
| THIRTY | 3/30/09 | DARBINYAN;<br>ORTEGA;<br>TERZYAN;<br>MARES;<br>WILSON | Name, Account Number, and Signature of victim Y.G. |
| THIRTY-ONE | 3/30/09 | DARBINYAN;<br>ORTEGA;<br>TERZYAN;<br>MARES;<br>WILSON | Name, Account Number, and Signature of victim Y.G. |
| THIRTY-TWO | 4/14/09 | DARBINYAN;<br>TANGABEKYAN;<br>HAGOP YAMALYAN,<br>aka "Hago"<br>("YAMALYAN");<br>TERZYAN | Names, Account Number, and Signatures of victims F.D. and M.D. |
| THIRTY-THREE | 4/14/09 | DARBINYAN;<br>TANGABEKYAN;<br>LUSINE<br>OGANDGANYAN,<br>aka "Lusine<br>Ogandjanian,"<br>aka "Luso"<br>("L.<br>OGANDGANYAN");<br>YAMALYAN;<br>TERZYAN;<br>FNU LNU,<br>aka "David<br>Petrosov" | Names, Account Number, and Signatures of victims F.D. and M.D. |
| THIRTY-FOUR | 4/16/09 | DARBINYAN;<br>KAREN MARKOSIAN,<br>aka "Kar,"<br>aka "Garen"<br>("MARKOSIAN");<br>MNATSAKANYAN;<br>L. OGANDGANYAN;<br>ORTEGA | Name, Account Number, and Signature of victim L.R. |

126

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|-------|------|--------------|-------------------------|
| THIRTY-FIVE | 6/22/09 | TANGABEKYAN | Account Number and Social Security Number of victim R.M. |
| THIRTY-SIX | 6/22/09 | TANGABEKYAN | Account Number and Social Security Number of victim J.D. |
| THIRTY-SEVEN | 6/22/09 | TANGABEKYAN | Account Number and Social Security Number of victim R.T. |

127

1            COUNTS THIRTY-EIGHT THROUGH SIXTY-EIGHT

2                        [18 U.S.C. § 1344]

3    A.    INTRODUCTORY ALLEGATIONS

4         1.    At all times pertinent to this Indictment, the

5    deposits of Bank of America, Guaranty Bank, Altura Credit Union,

6    Ventura County Credit Union, Schools First Credit Union, and U.S.

7    Bank were federally insured.

8    B.    THE FRAUDULENT SCHEME

9         2.    Beginning in or around July 2009, and continuing

10   through in or around August 2009, in Los Angeles County, within

11   the Central District of California, and elsewhere, defendants

12   MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood

13   Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher"

14   ("DARBINYAN"),  ARAM PETROSIAN, aka "Tot," aka "Toto"

15   ("PETROSIAN"), RAYMOND TARVERDYAN, aka "Rye," aka "Ray"

16   ("TARVERDYAN"), GUSTAVO ORTEGA, aka "Bam Bam," aka "Bams," "Gus"

17   ("ORTEGA"), RAFAEL PARSADANYAN, aka "Raffi," aka "Raffo"

18   ("PARSADANYAN"), SIMON ANTONYAN, aka "Simo," aka "Sim"

19   ("ANTONYAN"), GAREN CHOULDJIAN, aka "Misak" ("CHOULDJIAN"),

20   ANDRANIK BAKHCHADJIAN, aka "Ando," aka "Andranik Bakhcadjian"

21   ("BAKHCHADJIAN"), VARTENIE ANANIAN ("ANANIAN"), KHACHATUR

22   ARAKELYAN, aka "Khecho" ("ARAKELYAN"), CATRINA BALDERRAMA

23   ("BALDERRAMA"), and VARDAN AMIRKHANYAN ("AMIRKHANYAN"), together

24   with others known and unknown to the Grand Jury, knowingly and

25   with intent to defraud, devised, executed, and attempted to

26   execute a scheme to defraud Bank of America, Guaranty Bank,

27   Altura Credit Union, Ventura County Credit Union, Schools First

28

                               128

1  Credit Union, U.S. Bank, and other financial institutions as to

2  material matters, and to obtain money and property from Bank of

3  America, Guaranty Bank, Altura Credit Union, Ventura County

4  Credit Union, Schools First Credit Union, U.S. Bank, and other

5  financial institutions by means of material false and fraudulent

6  pretenses, representations, and promises, and the concealment of

7  material facts.

8       3.     The fraudulent scheme operated, in substance, in the

9  following manner:

10           a.  Defendants DARBINYAN and ANTONYAN, and others

11 known and unknown to the Grand Jury, obtained skimming devices

12 and distributed them to other co-schemers, including defendants

13 TARVERDYAN, ORTEGA, BAKHCHADJIAN, ANANIAN, and BALDERRAMA.

14           b.  Defendants TARVERDYAN, ORTEGA, BAKHCHADJIAN,

15 ANANIAN, and BALDERRAMA, and others known and unknown to the

16 Grand Jury, installed the skimming devices at 99 Cents Only

17 Stores throughout Southern California, including within the

18 Central District of California.

19           c.  After the skimming devices had gathered account

20 numbers and access codes belonging to victim-account owners,

21 defendants TARVERDYAN, ORTEGA, BAKHCHADJIAN, ANANIAN, BALDERRAMA,

22 and others known and unknown to the Grand Jury, retrieved the

23 skimming devices from the 99 Cents Only Stores.

24           d.  Defendants DARBINYAN, TARVERDYAN, PARSADANYAN, and

25 ANTONYAN, and others known and unknown to the Grand Jury,

26 distributed the victim-account numbers, fraudulently obtained

27 using the skimming devices, to other co-schemers in order to

28

129

1  withdraw money from the victim-account owners' bank accounts

2  without the victim-account owners' consent, knowledge, or

3  authorization.

4        e.  Defendants PETROSIAN, PARSADANYAN, CHOULDJIAN, and

5  ARAKELYAN, and others known and unknown to the Grand Jury,

6  coordinated groups of "runners" and provided the runners with

7  fraudulent debit cards so that the runners could withdraw money

8  from the victim-account owners' bank accounts without the victim-

9  account owners' consent, knowledge, or authorization.

10        f.  Defendant AMIRKHANYAN and others known and unknown

11  to the Grand Jury withdrew money from the victim-account owners'

12  bank accounts without the victim-account owners' consent,

13  knowledge, or authorization.

14        g.  Defendants distributed proceeds from the unlawful

15  scheme among themselves.

16  C.  THE EXECUTION OF THE SCHEME

17      4.  On or about the following dates, within the Central

18  District of California, and elsewhere, defendants DARBINYAN,

19  PETROSIAN, TARVERDYAN, ORTEGA, PARSADANYAN, ANTONYAN, CHOULDJIAN,

20  BAKHCHADJIAN, ANANIAN, ARAKELYAN, BALDERRAMA, and AMIRKHANYAN,

21  and others known and unknown to the Grand Jury, committed and

22  willfully caused others to commit the following acts, each of

23  which constituted an execution and attempted execution of the

24  fraudulent scheme:

25  ///

26  ///

27  ///

28

| COUNT | DATE | ACT |
|-------|------|-----|
| THIRTY-EIGHT | 7/17/09 | Withdrawal of $300 from Altura Credit Union account number xxxxxx-4193, in the name of victim J.D. |
| THIRTY-NINE | 7/17/09 | Withdrawal of $300 from Altura Credit Union account number xxxxxx-4353, in the name of victim S.G. |
| FORTY | 7/17/09 | Withdrawal of $100 from Bank of America account number xxxxxx-2441, in the name of victim M.L. |
| FORTY-ONE | 7/17/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-8903, in the name of victim M.J. |
| FORTY-TWO | 7/17/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-9996, in the name of victim R.R. |
| FORTY-THREE | 7/17/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-7309, in the name of victim B.T. |
| FORTY-FOUR | 7/18/09 | Withdrawal of $300 from Altura Credit Union account number xxxxxx-4193, in the name of victim J.D. |
| FORTY-FIVE | 7/18/09 | Withdrawal of $200 from Altura Credit Union account number xxxxxx-4353, in the name of victim S.G. |
| FORTY-SIX | 7/18/09 | Withdrawal of $300 from Bank of America account number xxxxxx-4118, in the name of victim H.B. |
| FORTY-SEVEN | 7/18/09 | Withdrawal of $500 from Bank of America account number xxxxxx-4118, in the name of victim H.B. |
| FORTY-EIGHT | 7/18/09 | Withdrawal of $500 from Bank of America account number xxxxxx-2441, in the name of victim M.L. |
| FORTY-NINE | 7/18/09 | Withdrawal of $500 from U.S. Bank account number xxxxxx-7284, in the name of victim L.D. |
| FIFTY | 7/18/09 | Withdrawal of $300 from Guaranty Bank account number xxxxxx-8903, in the name of victim M.J. |

| FIFTY-ONE | 7/18/09 | Withdrawal of $200 from Guaranty Bank account number xxxxxx-8903, in the name of victim M.J. |
| FIFTY-TWO | 7/18/09 | Withdrawal of $300 from Guaranty Bank account number xxxxxx-9996, in the name of victim R.R. |
| FIFTY-THREE | 7/18/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-7309, in the name of victim B.T. |
| FIFTY-FOUR | 7/18/09 | Withdrawal of $500 from Schools First Credit Union account number xxxx-6700, in the name of victim J.A. |
| FIFTY-FIVE | 7/18/09 | Withdrawal of $300 from Schools First Credit Union account number xxxx-8730, in the name of victim B.V. |
| FIFTY-SIX | 7/19/09 | Withdrawal of $300 from Altura Credit Union account number xxxxxx-2862, in the name of victim H.B. |
| FIFTY-SEVEN | 7/19/09 | Withdrawal of $300 from Altura Credit Union account number xxxxxx-4193, in the name of victim J.D. |
| FIFTY-EIGHT | 7/19/09 | Withdrawal of $200 from Bank of America account number xxxxxx-9309, in the name of victim M.B. |
| FIFTY-NINE | 7/19/09 | Withdrawal of $300 from Bank of America account number xxxxxx-9309, in the name of victim M.B. |
| SIXTY | 7/19/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-8903, in the name of victim M.J. |
| SIXTY-ONE | 7/19/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-6213, in the name of victim Y.O. |
| SIXTY-TWO | 7/19/09 | Withdrawal of $300 from Guaranty Bank account number xxxxxx-9996, in the name of victim R.R. |
| SIXTY-THREE | 7/20/09 | Withdrawal of $300 from Altura Credit Union account number xxxxxx-4353, in the name of victim S.G. |
| SIXTY-FOUR | 7/20/09 | Withdrawal of $500 from Bank of America account number xxxxxx-9309, in the name of victim M.B. |

132

| | | |
|---|---|---|
| SIXTY-FIVE | 7/20/09 | Withdrawal of $500 from Guaranty Bank account number xxxxxx-6213, in the name of victim Y.O. |
| SIXTY-SIX | 7/23/09 | Withdrawal of $500 from U.S. Bank account number xxxxxx-719326, in the name of victim M.J.K.. |
| SIXTY-SEVEN | 8/19/09 | Withdrawal of $500 from Ventura County Credit Union account number xxxxxx-7848, in the name of victim J.L. |
| SIXTY-EIGHT | 8/20/09 | Withdrawal of $500 from Ventura County Credit Union account number xxxxxx-5581, in the name of victim A.M. |

133

COUNT SIXTY-NINE

[18 U.S.C. § 1029(b)(2)]

A.   OBJECTS OF THE CONSPIRACY

From at least in or around July 2009, until in or around
August 2009, in Los Angeles, Orange, Riverside, and Ventura
Counties, within the Central District of California, and
elsewhere, defendants MHER DARBINYAN, also known as ("aka")
"Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone,"
aka "Caps," aka "Maher" ("DARBINYAN"), ARAM PETROSIAN, aka "Tot,"
aka "Toto" ("PETROSIAN"), RAYMOND TARVERDYAN, aka "Rye," aka
"Ray" ("TARVERDYAN"), GUSTAVO ORTEGA, aka "Bam Bam," aka "Bams,"
"Gus" ("ORTEGA"), RAFAEL PARSADANYAN, aka "Raffi," aka "Raffo"
("PARSADANYAN"), SIMON ANTONYAN, aka "Simo," aka "Sim"
("ANTONYAN"), GAREN CHOULDJIAN, aka "Misak" ("CHOULDJIAN"),
ANDRANIK BAKHCHADJIAN, aka "Ando," aka "Andranik Bakhcadjian,"
("BAKHCHADJIAN"), VARTENIE ANANIAN ("ANANIAN"), KHACHATUR
ARAKELYAN, aka "Khecho" ("ARAKELYAN"), CATRINA BALDERRAMA
("BALDERRAMA"), and VARDAN AMIRKHANYAN ("AMIRKHANYAN"), together
with others known and unknown to the Grand Jury, conspired and
agreed with each other to commit the following offenses under
Title 18, United States Code, Section 1029(a), affecting
interstate and foreign commerce:

1.     To knowingly and with intent to defraud produce, use,
and traffic in one or more counterfeit access devices, in
violation of Title 18, United States Code, Section 1029(a)(1);

2.     To knowingly and with intent to defraud possess
fifteen or more counterfeit or unauthorized access devices at the

134

1  same time, in violation of Title 18, United States Code, Section

2  1029(a)(3); and

3      3.    To knowingly and with intent to defraud have custody

4  and control of, and possess, device-making equipment, in

5  violation of Title 18, United States Code, Section 1029(a)(4).

6  B.  <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

7      <u>ACCOMPLISHED</u>

8      The objects of the conspiracy were to be accomplished, in

9  substance, as follows:

10     1.    Defendants DARBINYAN and ANTONYAN, and other co-

11 conspirators known and unknown to the Grand Jury, would obtain

12 skimming devices and distribute them to other co-conspirators,

13 including defendants TARVERDYAN, ORTEGA, BAKHCHADJIAN, ANANIAN,

14 and BALDERRAMA.

15     2.    Defendants TARVERDYAN, ORTEGA, BAKHCHADJIAN, ANANIAN,

16 and BALDERRAMA, and other co-conspirators known and unknown to

17 the Grand Jury, would install the skimming devices at 99 Cents

18 Only Stores throughout Southern California, including within the

19 Central District of California.

20     3.    After the skimming devices had gathered account

21 numbers and access codes belonging to victim-account owners,

22 defendants TARVERDYAN, ORTEGA, BAKHCHADJIAN, ANANIAN, and

23 BALDERRAMA, and other co-conspirators known and unknown to the

24 Grand Jury, would retrieve the skimming devices from the 99 Cents

25 Only Stores.

26     4.    Defendants DARBINYAN, TARVERDYAN, PARSADANYAN, and

27 ANTONYAN, and other co-conspirators known and unknown to the

28

1  Grand Jury, would distribute the victim-account numbers,
2  fraudulently obtained using the skimming devices, to other co-
3  conspirators in order to withdraw money from the victim-account
4  owners' bank accounts without the victim-account owners' consent,
5  knowledge, or authorization.

6      5.    Defendants PETROSIAN, PARSADANYAN, CHOULDJIAN, and
7  ARAKELYAN, and other co-conspirators known and unknown to the
8  Grand Jury, would coordinate groups of "runners" and provide the
9  runners with fraudulent debit cards so that the runners could
10  withdraw money from the victim-account owners' bank accounts
11  without the victim-account owners' consent, knowledge, or
12  authorization.

13      6.    Defendant AMIRKHANYAN, and other co-conspirators
14  known and unknown to the Grand Jury, would withdraw money from
15  the victim-account owners' bank accounts without the victim-
16  account owners' consent, knowledge, or authorization.

17      7.    Defendants DARBINYAN, PETROSIAN, TARVERDYAN, ORTEGA,
18  PARSADANYAN, ANTONYAN, CHOULDJIAN, BAKHCHADJIAN, ANANIAN,
19  ARAKELYAN, BALDERRAMA, and AMIRKHANYAN, and other co-conspirators
20  known and unknown to the Grand Jury, would distribute proceeds
21  from the unlawful scheme among themselves.

22  C.  OVERT ACTS

23      In furtherance of the conspiracy and to accomplish its
24  objects, defendants DARBINYAN, PETROSIAN, TARVERDYAN, ORTEGA,
25  PARSADANYAN, ANTONYAN, CHOULDJIAN, BAKHCHADJIAN, ANANIAN,
26  ARAKELYAN, BALDERRAMA, and AMIRKHANYAN, and others known and
27  unknown to the Grand Jury, committed and caused to be committed
28

various overt acts on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.      On or about July 6, 2009, defendant DARBINYAN, in a telephone conversation using coded language, discussed with defendant TARVERDYAN their plan to install skimming devices at 99 Cents Only Stores.

2.      On or about July 6, 2009, defendants TARVERDYAN and BAKHCHADJIAN entered a 99 Cents Only Store in Whittier, California, to install a skimming device.

3.      On or about July 13, 2009, defendant DARBINYAN, in a telephone conversation using coded language, told defendants PETROSIAN and CHOULDJIAN that a co-conspirator was going to deliver victim-account information the following day or Friday.

4.      On or about July 14, 2009, defendants TARVERDYAN and BAKHCHADJIAN retrieved skimming devices from three different 99 Cents Only Stores in Riverside, California.

5.      On or about July 16, 2009, defendant DARBINYAN, in a telephone conversation using coded language, told defendant PETROSIAN that DARBINYAN had fraudulently obtained debit card account numbers and needed four "runners" the following day to withdraw money using the fraudulently obtained debit card account numbers.

6.      On or about July 16, 2009, defendant DARBINYAN, in a telephone conversation using coded language, told defendant ARAKELYAN that DARBINYAN needed four "runners" the following day to withdraw money using the fraudulently obtained debit card

1   account numbers.

2        7.    On or about July 16, 2009, defendant TARVERDYAN, in a

3   telephone conversation using coded language, asked defendant

4   DARBINYAN if DARBINYAN would be using "runners" to withdraw money

5   using the fraudulently obtained debit card account numbers the

6   following day, and DARBINYAN responded affirmatively.

7        8.    On or about July 16, 2009, defendant DARBINYAN, in a

8   telephone conversation using coded language, told defendant

9   CHOULDJIAN that DARBINYAN needed four to five "runners" the

10  following day to withdraw money and that he had approximately 400

11  fraudulently obtained account numbers, and CHOULDJIAN said that

12  the runners would withdraw the money from ATMs.

13       9.    On or about July 17, 2009, defendant DARBINYAN, in a

14  telephone conversation using coded language, discussed with

15  defendant TARVERDYAN having "runners" withdraw money that day.

16       10.   On or about July 17, 2009, defendant TARVERDYAN, in a

17  telephone conversation using coded language, told defendant

18  DARBINYAN that he had fraudulently obtained account numbers from

19  Wells Fargo Bank, and TARVERDYAN asked DARBINYAN if he was ready

20  for a second set of fraudulently obtained account numbers to

21  provide to the "runners."

22       11.   On or about July 17, 2009, defendants DARBINYAN and

23  ARAKELYAN, in a telephone conversation using coded language,

24  discussed the status of their efforts to withdraw money using the

25  fraudulently obtained account numbers.

26       12.   On or about July 17, 2009, defendants DARBINYAN and

27  TARVERDYAN, in a telephone conversation using coded language,

28

discussed having "runners" withdraw funds before and after
midnight to avoid bank ATM withdrawal limits.

13.   On or about July 17, 2009, defendant AMIRKHANYAN
withdrew approximately $500 from a Guaranty Bank account in the
name of victim B.T.

14.   On or about July 18, 2009, defendants DARBINYAN and
PARSADANYAN, in a telephone conversation using coded language,
discussed how the "runners" had withdrawn funds before and after
midnight to avoid bank ATM withdrawal limits, and PARSADANYAN
said there were some fraudulent debit cards left over.

15.   On or about July 18, 2009, defendant PETROSIAN, in a
telephone conversation using coded language, told defendant
DARBINYAN that the "runners" were all there and working that day.

16.   On or about July 18, 2009, defendant CHOULDJIAN, in a
telephone conversation using coded language, told defendant
DARBINYAN that the "runners" had withdrawn approximately $14,500,
and that there were still more fraudulently obtained account
numbers to be used.

17.   On or about July 18, 2009, defendant DARBINYAN, in a
telephone conversation using coded language, discussed with
defendant TARVERDYAN distributing proceeds from the fraudulent
bank withdrawals, and DARBINYAN told TARVERDYAN that he was going
to send PARSADANYAN to deliver approximately $30,000 to
TARVERDYAN because DARBINYAN did not want to drive with it.

18.   On or about July 18, 2009, defendant PARSADANYAN
possessed approximately $30,000 in criminal proceeds inside a
shoe box.

139

1    19.   On or about July 18, 2009, defendant DARBINYAN, in a
2 telephone conversation using coded language, discussed with
3 defendant TARVERDYAN sending co-conspirators to withdraw money
4 using fraudulent debit cards.

5    20.   On or about July 18, 2009, defendant AMIRKHANYAN
6 withdrew approximately $300 from a Guaranty Bank account in the
7 name of victim R.R.

8    21.   On or about July 20, 2009, defendant TARVERDYAN and
9 an unidentified co-conspirator entered a 99 Cents Only Store in
10 Riverside, California, to examine a debit/credit card keypad.

11    22.   On or about July 20, 2009, defendants DARBINYAN and
12 PETROSIAN, in a telephone conversation using coded language,
13 discussed what percentage of the fraudulently obtained money
14 should be paid to the "runners."

15    23.   On or about July 21, 2009, defendants DARBINYAN and
16 TARVERDYAN, in a telephone conversation using coded language,
17 discussed installing skimming devices at 99 Cents Only Stores.

18    24.   On or about July 21, 2009, defendant TARVERDYAN, in a
19 telephone conversation using coded language, told defendant
20 DARBINYAN that employees of 99 Cents Only Stores may have
21 discovered some of the skimming devices that they had installed
22 at debit/credit card terminals.

23    25.   On or about July 22, 2009, defendants BAKHCHADJIAN
24 and ANANIAN entered a 99 Cents Only Store in Riverside,
25 California, to examine a debit/credit card keypad.

26    26.   On or about August 8, 2009, defendants DARBINYAN and
27 PARSADANYAN, in a telephone conversation using coded language,
28

1  discussed installing skimming devices.

2       27.   On or about August 8, 2009, defendants DARBINYAN and

3  TARVERDYAN, in a telephone conversation using coded language,

4  discussed installing skimming devices that day.

5       28.   On or about August 8, 2009, defendants BAKHCHADJIAN

6  and ANANIAN, and other unindicted co-conspirators, installed a

7  skimming device at a 99 Cents Only Store in Ventura, California.

8       29.   On or about August 8, 2009, unindicted co-

9  conspirators installed a skimming device at a 99 Cents Only Store

10 in North Hollywood, California.

11      30.   On or about August 9, 2009, defendants DARBINYAN and

12 PARSADANYAN, in a telephone conversation using coded language,

13 discussed the installation of skimming devices at 99 Cents Only

14 Stores the day before, and PARSADANYAN said that fraudulently

15 obtained account numbers should arrive soon.

16      31.   On or about August 9, 2009, defendant DARBINYAN, in a

17 telephone conversation using coded language, told defendant

18 CHOULDJIAN that the fraudulently obtained account numbers were

19 ready, and both defendants discussed getting "runners."

20      32.   On or about August 13, 2009, defendant DARBINYAN, in

21 a telephone conversation using coded language, told defendant

22 Artur Pembejian that defendant BAKHCHADJIAN would be installing

23 skimming devices soon.

24      33.   On or about August 14, 2009, defendants BAKHCHADJIAN

25 and ANANIAN installed skimming devices at two 99 Cents Only

26 Stores in Huntington Beach, California.

27

28

1     34.   On or about August 14, 2009, defendant ANTONYAN, in a
2  telephone conversation using coded language, told defendant
3  DARBINYAN that ANTONYAN was in the San Diego, California area
4  with others, and that they had skimming devices.

5     35.   On or about August 13 and August 14, 2009, unindicted
6  co-conspirators installed skimming devices at 99 Cents Only
7  Stores in San Diego, California.

8     36.   On or about August 14, 2009, defendant ANTONYAN, in a
9  telephone conversation using coded language, told defendant
10 DARBINYAN that they had successfully installed skimming devices
11 at 99 Cents Only Stores in San Diego, California.

12    37.   On or about August 24, 2009, defendant ANTONYAN, in a
13 telephone conversation using coded language, told defendant
14 DARBINYAN that ANTONYAN and other unindicted co-conspirators
15 would soon be picking up skimming devices from 99 Cents Only
16 Stores.

17    38.   On or about August 24, 2009, defendants BAKHCHADJIAN
18 and ANANIAN, and other unindicted co-conspirators, attempted to
19 retrieve a skimming device from a 99 Cents Only Store in
20 Huntington Beach, California.

21    39.   On or about August 24, 2009, defendants BAKHCHADJIAN
22 and ANANIAN possessed skimming devices, each containing
23 approximately 524 and 348 victim records, respectively.

24    40.   On or about August 26, 2009, defendant DARBINYAN, in
25 a telephone conversation using coded language, discussed with
26 defendant ANTONYAN picking up a skimming device from ANTONYAN.

27

28
                                142

41.   On or about August 27, 2009, defendant DARBINYAN, in a telephone conversation using coded language, told defendant PARSADANYAN that he was on his way to San Diego, California, to meet with defendant ORTEGA.

42.   On or about August 27, 2009, defendants ORTEGA and BALDERRAMA, and other unindicted co-conspirators, retrieved skimming devices from two 99 Cents Only Stores in San Diego, California.

43.   On or about August 27, 2009, defendants DARBINYAN and PARSADANYAN, in a telephone conversation using coded language, discussed proceeds from the skimming device scheme targeting 99 Cents Only Stores.

COUNT SEVENTY

[18 U.S.C. §§ 1029(a)(4), 2]

On or about August 24, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANDRANIK BAKHCHADJIAN, also known as ("aka") "Ando," aka "Andranik Bakhcadjian," and VARTENIE ANANIAN, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud had custody and control of, possessed, and aided and abetted the custody, control, and possession of, device-making equipment, as defined in Title 18, United States Code, Section 1029(e)(6), namely, a credit and debit card skimming device, with said custody, control, and possession affecting interstate and foreign commerce.

COUNTS SEVENTY-ONE THROUGH NINETY-FIVE

[18 U.S.C. §§ 1028A(a)(1), 2]

On or about the dates specified below, in Los Angeles, Orange, Riverside, and Ventura Counties, within the Central District of California, and elsewhere, the defendants named below, while aiding and abetting each other, and together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, as specified below, during and in relation to: (1) Bank Fraud, a felony violation of Title 18, United States Code, Section 1344, as charged in Counts Thirty-Eight through Sixty-Eight of this Indictment; and (2) Access Device Fraud, a felony violation of Title 18, United States Code, Section 1029, as charged in Counts Sixty-Nine and Seventy of this Indictment:

145

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|-------|------|--------------|-------------------------|
| SEVENTY-ONE | 7/17/09 | MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher" ("DARBINYAN"); ARAM PETROSIAN, aka "Tot," aka "Toto" ("PETROSIAN"); RAYMOND TARVERDYAN, aka "Rye," aka "Ray" ("TARVERDYAN"); GUSTAVO ORTEGA, aka "Bam Bam," aka "Bams," aka "Gus" ("ORTEGA"); RAFAEL PARSADANYAN, aka "Raffi," aka "Raffo" ("PARSADANYAN"); SIMON ANTONYAN, aka "Simo," aka "Sim" ("ANTONYAN"); GAREN CHOULDJIAN, aka "Misak" ("CHOULDJIAN"); ANDRANIK BAKHCHADJIAN, aka "Ando" aka "Andranik Bakhcadjian" ("BAKHCHADJIAN"); VARTENIE ANANIAN ("ANANIAN"); KHACHATUR ARAKELYAN, aka "Khecho" ("ARAKELYAN") | Account Number, Altura Credit Union account number xxxxxx-4193, and Personal Identification Number ("PIN") of victim J.D. |

146

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| SEVENTY-TWO | 7/17/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Altura Credit Union<br>account number<br>xxxxxx-4353, and<br>PIN of victim S.G. |
| SEVENTY-THREE | 7/17/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank<br>account number<br>xxxxxx-8903, and<br>PIN of victim M.J. |
| SEVENTY-FOUR | 7/17/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank<br>account number<br>xxxxxx-9996, and<br>PIN of victim R.R. |
| SEVENTY-FIVE | 7/17/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN;<br>VARDAN AMIRKHANYAN<br>("AMIRKHANYAN") | Account Number,<br>Guaranty Bank<br>account number<br>xxxxxx-7309, and<br>PIN of victim B.T. |

147

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| SEVENTY-SIX | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Bank of America<br>account number<br>xxxxxx-4118, and<br>PIN of victim H.B. |
| SEVENTY-SEVEN | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Altura Credit Union<br>account number<br>xxxxxx-4193, and<br>PIN of victim J.D. |
| SEVENTY-EIGHT | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>U.S. Bank account<br>number xxxxxx-7284, and<br>PIN of victim L.D. |
| SEVENTY-NINE | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Altura Credit Union<br>account number<br>xxxxxx-4353, and<br>PIN of victim S.G. |

148

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|-------|------|--------------|-------------------------|
| EIGHTY | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank account<br>number xxxxxx-8903, and<br>PIN of victim M.J. |
| EIGHTY-ONE | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Bank of America account<br>number xxxxxx-4441, and<br>PIN of victim M.L. |
| EIGHTY-TWO | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN;<br>AMIRKHANYAN | Account Number,<br>Guaranty Bank account<br>number xxxxxx-9996, and<br>PIN of victim R.R. |
| EIGHTY-THREE | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank account<br>number xxxxxx-7309, and<br>PIN of victim B.T. |

149

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| EIGHTY-FOUR | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Schools First Credit<br>Union account number<br>xxxx-6700, and<br>PIN of victim J.A. |
| EIGHTY-FIVE | 7/18/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Schools First Credit<br>Union account number<br>xxxx-8730, and<br>PIN of victim B.V. |
| EIGHTY-SIX | 7/19/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Bank of America account<br>number xxxxxx-9309, and<br>PIN of victim M.B. |
| EIGHTY-SEVEN | 7/19/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank account<br>number xxxxx-8903, and<br>PIN of victim M.J. |

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| EIGHTY-EIGHT | 7/19/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank account<br>number xxxxxx-6213, and<br>PIN of victim Y.O. |
| EIGHTY-NINE | 7/19/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Guaranty Bank account<br>number xxxxxx-9996, and<br>PIN of victim R.R. |
| NINETY | 7/20/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Bank of America account<br>number xxxxxx-9309, and<br>PIN of victim M.B. |
| NINETY-ONE | 7/20/09 | DARBINYAN;<br>PETROSIAN;<br>TARVERDYAN;<br>ORTEGA;<br>PARSADANYAN;<br>ANTONYAN;<br>CHOULDJIAN;<br>BAKHCHADJIAN;<br>ANANIAN;<br>ARAKELYAN | Account Number,<br>Altura Credit Union<br>account number<br>xxxxxx-4353, and<br>PIN of victim S.G. |

151

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| NINETY-TWO | 7/20/09 | DARBINYAN; PETROSIAN; TARVERDYAN; ORTEGA; PARSADANYAN; ANTONYAN; CHOULDJIAN; BAKHCHADJIAN; ANANIAN; ARAKELYAN | Account Number, Guaranty Bank account number xxxxxx-6213, and PIN of victim Y.O. |
| NINETY-THREE | 7/23/09 | DARBINYAN; PETROSIAN; TARVERDYAN; ORTEGA; PARSADANYAN; ANTONYAN; CHOULDJIAN; BAKHCHADJIAN; ANANIAN; ARAKELYAN | Account Number, U.S. Bank account number xxxxxx-719326, and PIN of victim M.J.K. |
| NINETY-FOUR | 8/19/09 | DARBINYAN; PETROSIAN; TARVERDYAN; ORTEGA; PARSADANYAN; ANTONYAN; CHOULDJIAN; BAKHCHADJIAN; ANANIAN; ARAKELYAN | Account Number, Ventura County Credit Union account number xxxxxx-7848, and PIN of victim J.L. |
| NINETY-FIVE | 8/20/09 | DARBINYAN; PETROSIAN; TARVERDYAN; ORTEGA; PARSADANYAN; ANTONYAN; CHOULDJIAN; BAKHCHADJIAN; ANANIAN; ARAKELYAN | Account Number, Ventura County Credit Union account number xxxxxx-5581, and PIN of victim A.M. |

152

COUNTS NINETY-SIX THROUGH NINETY-EIGHT

[18 U.S.C. § 1344]

A.   INTRODUCTORY ALLEGATIONS

1.   At all times pertinent to this Indictment, the deposits of HSBC Bank and Bank of America were federally insured.

B.   THE FRAUDULENT SCHEME

2.   Beginning on a date unknown to the Grand Jury, but no later than in or around November 2009, and continuing through in or around June 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants PARAMAZ BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka "Parnamas Bileziktsian," aka "Bleziktsian Paramas" ("BILEZIKCHYAN"), KARO YERKANYAN, aka "Guilty," aka "Gator," aka "Kane" ("K. YERKANYAN"), and ANDRANIK ALOYAN, aka "Andy," aka "Ando" ("ALOYAN"), together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, executed, and attempted to execute a scheme to defraud HSBC Bank, Bank of America, and other financial institutions as to material matters, and to obtain money and property from HSBC Bank, Bank of America, and other financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3.   The fraudulent scheme operated, in substance, in the following manner:

a.   Defendants BILEZIKCHYAN, K. YERKANYAN, and ALOYAN, and other co-schemers, obtained personal identifying information belonging to third-party individuals, including their names,

1  addresses, social security numbers, dates of birth, and other

2  personal identifying information, without the individuals'

3  knowledge, consent, or authorization.

4         b.  Defendants BILEZIKCHYAN, K. YERKANYAN, and ALOYAN,

5  and other co-schemers, obtained bank account information

6  belonging to third-party individuals, including their account

7  names, the names of account owners, the account owners' personal

8  identifying information, and account values, without these

9  individuals' knowledge, consent, or authorization.

10        c.  Defendants BILEZIKCHYAN, K. YERKANYAN, and ALOYAN,

11  and other co-schemers, provided the third-party personal

12  identifying information and third-party bank account information

13  to other co-schemers to obtain money, open fraudulent bank

14  accounts, obtain bank loans, and obtain lines of credit, without

15  the knowledge, consent, or authorization of these third-party

16  individuals.

17  C.  THE EXECUTION OF THE SCHEME

18     4.   On or about the following dates, within the Central

19  District of California, and elsewhere, defendants BILEZIKCHYAN,

20  K. YERKANYAN, and ALOYAN, and others known and unknown to the

21  Grand Jury, committed and willfully caused others to commit the

22  following acts, each of which constituted an execution and

23  attempted execution of the fraudulent scheme:

24  ///

25  ///

26  ///

27

28

| COUNT | DATE | ACT |
|-------|------|-----|
| NINETY-SIX | 11/11/09 | Applied for bank account with HSBC Bank in the name of victim E.J. using personal identifying information for victim E.J. |
| NINETY-SEVEN | 11/21/09 | Possessed personal identifying information belonging to victim J.S. |
| NINETY-EIGHT | 3/10/10 | Distributed bank account information belonging to victim S.T. and Bank of America account number xxxxx-61642 |

155

1       COUNTS NINETY-NINE THROUGH ONE HUNDRED AND ONE

2           [18 U.S.C. §§ 1028A(a)(1), 2]

3     On or about the dates specified below, in Los Angeles and

4 Orange Counties, within the Central District of California, and

5 elsewhere, the defendants named below, while aiding and abetting

6 each other, and together with others known and unknown to the

7 Grand Jury, knowingly transferred, possessed, and used, and

8 willfully caused to be transferred, possessed, and used, without

9 lawful authority, a means of identification of another person, as

10 specified below, during and in relation to Bank Fraud, a felony

11 violation of Title 18, United States Code, Section 1344, as

12 charged in Counts Ninety-Six through Ninety-Eight of this

13 Indictment:

| COUNT | DATE | DEFENDANT(S) | MEANS OF IDENTIFICATION |
|---|---|---|---|
| NINETY-NINE | 11/11/09 | PARAMAZ BILEZIKCHYAN, aka "Parik," aka "P," aka "Parnamas Bileziktsian," aka "Bleziktsian Paramas" ("BILEZIKCHYAN"); KARO YERKANYAN, aka "Guilty," aka "Gator," aka "Kane" ("YERKANYAN") | Name, Social Security Number, and Date of Birth of victim E.J. |
| ONE HUNDRED | 11/21/09 | BILEZIKCHYAN; YERKANYAN | Name, Social Security Number, and Date of Birth of victim J.S. |
| ONE HUNDRED AND ONE | 3/10/10 | BILEZIKCHYAN; ANDRANIK ALOYAN, aka "Andy," aka "Ando" | Name, Bank Account Number, and Date of Birth of victim S.T. |

1                    COUNT ONE HUNDRED AND TWO

2                   [18 U.S.C. § 1028(a)(7)]

3     On or about November 21, 2009, in Los Angeles and Riverside

4  Counties, within the Central District of California, and

5  elsewhere, defendants PARAMAZ BILEZIKCHYAN, also known as ("aka")

6  "Parik," aka "P," aka "Parnamas Bileziktsian," aka "Bleziktsian

7  Paramas," and KARO YERKANYAN, aka "Guilty," aka "Gator," aka

8  "Kane," together with others known and unknown to the Grand Jury,

9  knowingly transferred, possessed, and used, without lawful

10  authority, a means of identification of another person, as

11  defined in Title 18, United States Code, Section 1028(d)(7), with

12  the intent to commit, to aid and abet, and in connection with,

13  unlawful activity constituting a violation of Federal law and a

14  felony under any applicable State and local law, including, but

15  not limited to, Bank Fraud, in violation of Title 18, United

16  States Code, Section 1344, and Access Device Fraud, in violation

17  of Title 18, United States Code, Section 1029, with said

18  transfer, possession, and use affecting interstate and foreign

19  commerce.

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND THREE

[18 U.S.C. § 371]

A.  OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about January 26, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper" ("H. KARAYAN"), ARMAN KARAYAN ("A. KARAYAN"), RAYMOND TARVERDYAN, aka "Rye," aka "Ray" ("TARVERDYAN"), GAGIK ZHAMKOCHYAN, aka "Manic," aka "Panther," aka "Gago," aka "Gag" ("ZHAMKOCHYAN"), KARAPET JOEY KARAMUSYAN, aka "Karo" ("KARAMUSYAN"), HAROUTIOUN ARTHUR MELKONIAN, aka "Art," aka "Art from Montebello" ("MELKONIAN"), and ARSEN AYRANJIAN ("AYRANJIAN"), together with others known and unknown to the Grand Jury, conspired and agreed with each other to commit the following offenses against the United States:

1.  To knowingly possess with intent to use and transfer unlawfully five or more identification documents and false identification documents, in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1028(a)(3);

2.  To knowingly transfer, possess, and use without lawful authority a means of identification of another person with the intent to commit, to aid and abet, and in connection with, unlawful activity constituting a violation of Federal law and applicable State and local law, in and affecting interstate and

1  foreign commerce, in violation of Title 18, United States Code,

2  Section 1028(a)(7);

3      3.  To commit aggravated identity theft, in violation of

4  Title 18, United States Code, Section 1028A(a)(1);

5      4.  To knowingly and with intent to defraud possess fifteen

6  or more counterfeit and unauthorized access devices, in violation

7  of Title 18, United States Code, Section 1029(a)(3); and

8      5.  To knowingly and with the intent to defraud produce,

9  traffic in, have custody and control of, and possess device-

10  making equipment, in violation of Title 18, United States Code,

11  Section 1029(a)(4).

12  B.  <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

13      <u>ACCOMPLISHED</u>

14      The objects of the conspiracy were to be accomplished, in

15  substance, as follows:

16      1.  Defendants H. KARAYAN, A. KARAYAN, TARVERDYAN,

17  ZHAMKOCHYAN, KARAMUSYAN, and MELKONIAN would identify individuals

18  whose identities could be utilized for fraudulent purposes.

19      2.  Defendants H. KARAYAN, A. KARAYAN, and AYRANJIAN would

20  rent an office space in which to possess fraudulent

21  identification documents and means of identification.

22      3.  Defendants H. KARAYAN, A. KARAYAN, TARVERDYAN,

23  ZHAMKOCHYAN, KARAMUSYAN, and MELKONIAN would possess various

24  means of identification of other persons, fraudulent access

25  devices, and device-making equipment for use in committing

26  identity theft and access device fraud.

27

28

4.   Defendants H. KARAYAN and AYRANJIAN, when questioned by law enforcement about their activities at the rented office space, would lie to law enforcement about the true nature of their business in order to conceal and further the conspiracy to commit identity theft and access device fraud.

C.   <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants H. KARAYAN, A. KARAYAN, TARVERDYAN, ZHAMKOCHYAN, KARAMUSYAN, MELKONIAN, and AYRANJIAN, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts on or about the following dates, within the Central District of California, and elsewhere, including, but not limited to, the following:

1.   On or about January 16, 2010, defendants H. KARAYAN and TARVERDYAN, in a telephone conversation using coded language, discussed the need to get their fraudulent operation started so that they could make some money.

2.   On or about January 21, 2010, defendants H. KARAYAN and TARVERDYAN, in a telephone conversation using coded language, discussed how they had six individuals ready to work on their fraudulent business and discussed the need to rent office space.

3.   On or about January 22, 2010, defendant H. KARAYAN, in a telephone conversation using coded language, told an unindicted co-conspirator that defendants TARVERDYAN, KARAMUSYAN, and MELKONIAN had put in money for their business.

4.   On or about January 22, 2010, defendants H. KARAYAN and A. KARAYAN, in a telephone conversation using coded language,

1  discussed how H. KARAYAN and defendant ZHAMKOCHYAN had found a

2  location for their fraudulent business.

3      5.      On or about January 25, 2010, defendant AYRANJIAN

4  signed a two-year lease for space at 13847 Saticoy Street in

5  North Hollywood, California ("Saticoy"), stating that the

6  property would be used only for a food pickling company and

7  related storage.

8      6.      On or about January 25, 2010, defendant A. KARAYAN

9  issued a cashier's check for $7,750 to DRZ Partners to lease

10  office space at Saticoy.

11      7.      On or about January 25, 2010, defendants H. KARAYAN

12  and ZHAMKOCHYAN, in a telephone conversation using coded

13  language, discussed how they would use the space at Saticoy for

14  their fraudulent business, and H. KARAYAN instructed ZHAMKOCHYAN

15  to contact defendants A. KARAYAN and KARAMUSYAN regarding

16  activities at Saticoy.

17      8.      On or about January 25, 2010, defendants H. KARAYAN

18  and A. KARAYAN, in a telephone conversation using coded language,

19  discussed the lease for the office space at Saticoy.

20      9.      On or about January 25, 2010, defendant H. KARAYAN,

21  in a telephone conversation using coded language, discussed with

22  defendant A. KARAYAN moving furniture into the office space at

23  Saticoy and told A. KARAYAN to instruct defendants KARAMUSYAN and

24  AYRANJIAN to obtain insurance for the fraudulent business at

25  Saticoy.

26      10.     On or about January 25, 2010, defendants H. KARAYAN

27  and KARAMUSYAN, in a telephone conversation using coded language,

28

1  discussed individuals whom they could pay in exchange for use of

2  their identities in fraudulent activity.

3      11.   On or about January 26, 2010, defendants H. KARAYAN

4  and ZHAMKOCHYAN, in a telephone conversation using coded

5  language, discussed individuals whom they could pay in exchange

6  for use of their identities in fraudulent activity.

7      12.   On or about January 26, 2010, defendants H. KARAYAN

8  and TARVERDYAN, in a telephone conversation using coded language,

9  discussed moving into the office space at Saticoy, and H. KARAYAN

10  said he would contact defendant KARAMUSYAN.

11      13.   On or about January 27, 2010, defendants H. KARAYAN

12  and ZHAMKOCHYAN, in a telephone conversation using coded

13  language, discussed moving into the office space at Saticoy and

14  that defendants KARAMUSYAN and MELKONIAN would also be there.

15      14.   On or about January 27, 2010, defendants H. KARAYAN,

16  A. KARAYAN, TARVERDYAN, ZHAMKOCHYAN, KARAMUSYAN, and MELKONIAN

17  went to the office at Saticoy.

18      15.   On or about January 28, 2010, defendants H. KARAYAN

19  and ZHAMKOCHYAN went to the office at Saticoy.

20      16.   On or about February 1, 2010, defendant TARVERDYAN,

21  in a telephone conversation using coded language, asked defendant

22  H. KARAYAN when they should go to the office at Saticoy and make

23  some money.

24      17.   On or about February 2, 2010, defendant H. KARAYAN,

25  in a telephone conversation using coded language, told defendant

26  ZHAMKOCHYAN that defendants A. KARAYAN, TARVERDYAN, and MELKONIAN

27  were at Saticoy.

28

18.   On or about February 3, 2010, defendant H. KARAYAN went to the office at Saticoy.

19.   On or about February 10, 2010, defendants H. KARAYAN, A. KARAYAN, TARVERDYAN, ZHAMKOCHYAN, KARAMUSYAN, and MELKONIAN possessed pre-paid telephone cards, marked with their names, for their use in connection with the fraudulent business at Saticoy.

20.   On or about February 10, 2010, defendants H. KARAYAN, A. KARAYAN, TARVERDYAN, ZHAMKOCHYAN, KARAMUSYAN, and MELKONIAN possessed rubber fingerprint covers to prevent their fingerprints from appearing on the documents and items inside Saticoy.

21.   On or about February 10, 2010, defendants H. KARAYAN, A. KARAYAN, TARVERDYAN, ZHAMKOCHYAN, KARAMUSYAN, and MELKONIAN possessed a "reader-writer" device used to re-encode the magnetic strip of access devices, such as credit and debit cards, and possessed a "skimming device" used to collect means of identification, including account numbers, from gas station pumps.

22.   On or about February 10, 2010, defendant H. KARAYAN made false and misleading statements and representations to law enforcement and claimed that he had never been to Saticoy, did not lease or own space at Saticoy, and did not operate a financial fraud business at Saticoy.

23.   On or about August 24, 2010, defendant AYRANJIAN made false and misleading statements and representations to law enforcement about his involvement with the operation of Saticoy and told law enforcement that when he signed the lease for the

163

1 │ office space at Saticoy, he intended for that space to be used as

2 │ an import-export business for canned foods.

COUNT ONE HUNDRED AND FOUR

[18 U.S.C. § 1028(a)(3)]

On or about February 10, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper," ARMAN KARAYAN, RAYMOND TARVERDYAN, aka "Rye," aka "Ray," GAGIK ZHAMKOCHYAN, aka "Manic," aka "Panther," aka "Gago," aka "Gag," KARAPET JOEY KARAMUSYAN, aka "Karo," and HAROUTIOUN ARTHUR MELKONIAN, aka "Art," aka "Art from Montebello," knowingly possessed with intent to unlawfully use and transfer five or more identification documents and false identification documents, all of which were issued and appeared to have been issued by and under the authority of the State of California and the United States, including California Drivers Licenses, Social Security Cards, and Employment Authorization Cards, with said possession and transfer affecting interstate and foreign commerce.

1          COUNT ONE HUNDRED AND FIVE

2            [18 U.S.C. § 1029(a)(3)]

3      On or about February 10, 2010, in Los Angeles County, within

4  the Central District of California, and elsewhere, defendants

5  HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper," ARMAN

6  KARAYAN, RAYMOND TARVERDYAN, aka "Rye," aka "Ray," GAGIK

7  ZHAMKOCHYAN, aka "Manic," aka "Panther," aka "Gago," aka "Gag,"

8  KARAPET JOEY KARAMUSYAN, aka "Karo," and HAROUTIOUN ARTHUR

9  MELKONIAN, aka "Art," aka "Art from Montebello," knowingly and

10 with intent to defraud possessed fifteen or more unauthorized and

11 counterfeit access devices, as defined in Title 18, United States

12 Code, Sections 1029(e)(1), (2), and (3), with said possession

13 affecting interstate and foreign commerce.

COUNT ONE HUNDRED AND SIX

[18 U.S.C. §§ 1029(a)(4), 2]

On or about February 10, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper," ARMAN KARAYAN, RAYMOND TARVERDYAN, aka "Rye," aka "Ray," GAGIK ZHAMKOCHYAN, aka "Manic," aka "Panther," aka "Gago," aka "Gag," KARAPET JOEY KARAMUSYAN, aka "Karo," and HAROUTIOUN ARTHUR MELKONIAN, aka "Art," aka "Art from Montebello," while aiding and abetting each other, and together with others known and unknown to the Grand Jury, knowingly and with intent to defraud had custody and control of and possessed, and willfully caused others to have custody and control of and possess, device-making equipment, as defined in Title 18, United States Code, Section 1029(e)(6), with said custody, control, and possession affecting interstate and foreign commerce.

1    COUNTS ONE HUNDRED AND SEVEN THROUGH ONE HUNDRED AND TEN

2    [18 U.S.C. §§ 1028A(a)(1), 2]

3    On or about February 10, 2010, in Los Angeles County, within

4    the Central District of California, and elsewhere, defendants

5    HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper," ARMAN

6    KARAYAN, RAYMOND TARVERDYAN, aka "Rye," aka "Ray," GAGIK

7    ZHAMKOCHYAN, aka "Manic," aka "Panther," aka "Gago," aka "Gag,"

8    KARAPET JOEY KARAMUSYAN, aka "Karo," and HAROUTIOUN ARTHUR

9    MELKONIAN, aka "Art," aka "Art from Montebello," while aiding and

10   abetting each other, and together with others known and unknown

11   to the Grand Jury, knowingly transferred, possessed, and used,

12   and willfully caused to be transferred, possessed, and used,

13   without lawful authority, a means of identification of another

14   person, as specified below, during and in relation to:

15   (1) Identity Theft, a felony violation of Title 18, United States

16   Code, Section 1028(a)(3), as charged in Count One Hundred and

17   Four of this Indictment; and (2) Access Device Fraud, a felony

18   violation of Title 18, United States Code, Section 1029(a), as

19   charged in Counts One Hundred and Five and One Hundred and Six of

20   this Indictment:

21   ///

22   ///

23   ///

24

25

26

27

28

| COUNT | MEANS OF IDENTIFICATION |
|---|---|
| ONE HUNDRED AND SEVEN | Name, Social Security Number, Date of Birth, Bank Account Numbers, and Driver's License Number belonging to victim M.S. |
| ONE HUNDRED AND EIGHT | Name, Social Security Number, Date of Birth, and Bank Account Numbers belonging to victim D.C. |
| ONE HUNDRED AND NINE | Name, Social Security Number, Date of Birth, Bank Account Numbers, and Driver's License Number belonging to victim C.B. |
| ONE HUNDRED AND TEN | Name, Social Security Number, Date of Birth, and Bank Account Numbers belonging to victim S.F. |

169

1        COUNT ONE HUNDRED AND ELEVEN

2           [18 U.S.C. § 1028(a)(7)]

3        On or about February 10, 2010, in Los Angeles County, within

4   the Central District of California, and elsewhere, defendants

5   HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper," ARMAN

6   KARAYAN, RAYMOND TARVERDYAN, aka "Rye," aka "Ray," GAGIK

7   ZHAMKOCHYAN, aka "Manic," aka "Panther," aka "Gago," aka "Gag,"

8   KARAPET JOEY KARAMUSYAN, aka "Karo," and HAROUTIOUN ARTHUR

9   MELKONIAN, aka "Art," aka "Art from Montebello," together with

10  others known and unknown to the Grand Jury, knowingly

11  transferred, possessed, and used, without lawful authority, a

12  means of identification of another person, as defined in Title

13  18, United States Code, Section 1028(d)(7), and as specified

14  below, with the intent to commit, to aid and abet, and in

15  connection with, unlawful activity constituting a violation of

16  Federal law and a felony under any applicable State and local

17  law, including, but not limited to, Access Device Fraud, in

18  violation of Title 18, United States Code, Section 1029(a), and

19  False Personation of Another, in violation of California Penal

20  Code Section 530.5, with said transfer, possession, and use

21  affecting interstate and foreign commerce:

22  ///

23  ///

24  ///

25

26

27

28

170

| MEANS OF IDENTIFICATION |
| --- |
| Name, Social Security Number, Date of Birth, Bank Account Numbers, and Driver's License Number belonging to victim M.S. |
| Name, Social Security Number, Date of Birth, and Bank Account Numbers belonging to victim D.C. |
| Name, Social Security Number, Date of Birth, Bank Account Numbers, and Driver's License Number belonging to victim C.B. |
| Name, Social Security Number, Date of Birth, and Bank Account Numbers belonging to victim S.F. |

171

COUNT ONE HUNDRED AND TWELVE

[18 U.S.C. § 1001(a)(2)]

On or about February 10, 2010, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the Federal Bureau of Investigation, defendant HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper" ("H. KARAYAN"), knowingly and willfully made a false material statement and representation, in that defendant H. KARAYAN told an agent with the Federal Bureau of Investigation that he did not recall visiting the location at 13847 Saticoy Street in North Hollywood, California, and that he did not work out of the location at 13847 Saticoy Street in North Hollywood, California, when, in truth and in fact, as defendant H. KARAYAN then and there well knew, defendant H. KARAYAN had been to 13847 Saticoy Street in North Hollywood, California, several times and was operating a fraudulent business at that location.

172

COUNT ONE HUNDRED AND THIRTEEN

[18 U.S.C. § 371]

A.    INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.    PMC Bancorp was licensed by the State of California as a Finance Lender and operated as a mortgage lending business, within the meaning of Title 18, United States Code, Section 20(10).

2.    Defendant NAIRA ASTGHIK TEROUNIAN was a real estate broker licensed in the State of California.

B.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about January 26, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher" ("DARBINYAN"), KARO YERKANYAN, aka "Guilty," aka "Gator," aka "Kane" ("K. YERKANYAN"), EDGAR YERKANYAN, aka "Edo" ("E. YERKANYAN"), KARINE MKRTCHYAN ("MKRTCHYAN"), and NAIRA ASTGHIK TEROUNIAN ("TEROUNIAN"), together with others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offense against the United States:  False Statements on a Loan Application, in violation of Title 18, United States Code, Section 1014.

///

///

173

C.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Defendant DARBINYAN would look for an individual to take title of a house where DARBINYAN lived with defendant MKRTCHYAN, located at 27033 Fairway Lane in Valencia, California ("the Fairway residence"), even though DARBINYAN and MKRTCHYAN intended to reside at the property after it was sold.

2.    Defendant TEROUNIAN, a real estate agent and loan broker, would advise defendant DARBINYAN about how he should select the person to assume title of the Fairway residence and assist defendants DARBINYAN, K. YERKANYAN, and E. YERKANYAN in obtaining the necessary approvals and loans to transfer title of the property from DARBINYAN to K. YERKANYAN.

3.    Defendant K. YERKANYAN would agree to pose as a buyer for the Fairway residence, even though K. YERKANYAN did not intend to occupy the Fairway residence.

4.    Defendant E. YERKANYAN would assist defendants DARBINYAN and K. YERKANYAN in facilitating the sale of the Fairway residence to K. YERKANYAN.

5.    Defendant MKRTCHYAN would obtain the money for defendant K. YERKANYAN's downpayment on the Fairway residence.

6.    Defendant K. YERKANYAN would make false statements on a loan application about his income, employment, and intent to occupy the Fairway residence in order to secure the loan with which to purchase the Fairway residence.

1    7.    Defendants DARBINYAN and MKRTCHYAN would continue to

2    live in the Fairway residence after it was sold to defendant K.

3    YERKANYAN.

4    C.    OVERT ACTS

5    In furtherance of the conspiracy and to accomplish the

6    object of the conspiracy, defendants DARBINYAN, K. YERKANYAN, E.

7    YERKANYAN, MKRTCHYAN, and TEROUNIAN, and others known and unknown

8    to the Grand Jury, committed and caused to be committed various

9    overt acts on or about the following dates, within the Central

10   District of California, and elsewhere, including, but not limited

11   to, the following:

12   1.    On or about September 28, 2009, defendants K.

13   YERKANYAN and TEROUNIAN signed a Uniform Residential Loan

14   Application containing false statements.

15   2.    On or about September 29, 2009, defendant MKRTCHYAN,

16   using coded language on the telephone, asked defendant DARBINYAN

17   if the loan was going to be approved, notified DARBINYAN that

18   defendant TEROUNIAN could not reach defendant E. YERKANYAN, and

19   asked DARBINYAN how they should proceed.

20   3.    On or about September 30, 2009, defendant DARBINYAN

21   spoke with an unindicted co-conspirator on the telephone and told

22   the unindicted co-conspirator, using coded language, that

23   DARBINYAN wanted to find someone to assume title of his house for

24   a few months, refinance it, and then put the house in the name of

25   his wife, defendant MKRTCHYAN.

26   4.    On or about October 3, 2009, defendant DARBINYAN

27   spoke with an unindicted co-conspirator on the telephone about

28

1   using defendant TEROUNIAN to assist him in finding someone to

2   assume title of his house.

3      5.   On or about October 6, 2009, defendants DARBINYAN and

4   E. YERKANYAN spoke by telephone and agreed, using coded language,

5   that the Fairway residence should be put in defendant K.

6   YERKANYAN's name and that E. YERKANYAN would talk to defendant

7   TEROUNIAN to facilitate the transfer of title for the Fairway

8   residence.

9      6.   On or about October 13, 2009, defendant DARBINYAN

10   told defendant E. YERKANYAN, in a telephone conversation using

11   coded language, to get copies of defendant K. YERKANYAN's social

12   security and driver's license cards and that DARBINYAN would

13   compensate K. YERKANYAN.

14      7.   On or about October 13, 2009, defendants DARBINYAN

15   and TEROUNIAN discussed on the telephone how to transfer title of

16   the Fairway residence to defendant K. YERKANYAN.

17      8.   On or about October 13, 2009, defendant TEROUNIAN

18   advised defendant DARBINYAN, in a telephone conversation using

19   coded language, not to use a real estate agent as the buyer

20   because the scheme was fraudulent and they could get in a lot of

21   trouble.

22      9.   On or about October 13, 2009, defendant TEROUNIAN

23   told defendant DARBINYAN, in a telephone conversation using coded

24   language, that she was working on the loan for defendant K.

25   YERKANYAN and that she was trying to get approval from the bank.

26      10.   On or about October 13, 2009, defendant TEROUNIAN, in

27   a telephone conversation using coded language, told defendant

28

1  DARBINYAN that DARBINYAN could get in a lot of trouble if their

2  scheme was discovered.

3      11.    On or about October 27, 2009, defendant TEROUNIAN

4  asked defendant DARBINYAN to have defendant E. YERKANYAN email

5  defendant K. YERKANYAN's bank statements to TEROUNIAN so that

6  TEROUNIAN could alter the bank statements.

7      12.    On or about December 14, 2009, defendant K. YERKANYAN

8  signed a note promising to pay $248,000 to PMC Bancorp, a

9  mortgage lending company.

10      13.    On or about December 14, 2009, defendant K. YERKANYAN

11  signed an Occupancy Statement, certifying under penalty of Title

12  18, United States Code, Section 1014, and other federal laws,

13  that he would occupy the Fairway residence as his principal

14  residence as required by, and in compliance with the terms of the

15  Deed of Trust/Mortgage/Security Instrument relating to the

16  Fairway residence.

17      14.    On or about December 14, 2009, defendants K.

18  YERKANYAN and TEROUNIAN signed a Uniform Residential Loan

19  Application containing false statements about K. YERKANYAN's

20  employment, income, and intent to occupy the Fairway residence.

21      15.    On or about December 21, 2009, defendant MKRTCHYAN

22  purchased a cashier's check for $70,000 for defendant K.

23  YERKANYAN to use as the downpayment to complete the purported

24  purchase of the Fairway residence.

25

26

27

28

COUNT ONE HUNDRED AND FOURTEEN

[18 U.S.C. §§ 1014, 2]

On or about December 14, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher," KARO YERKANYAN, aka "Guilty," aka "Gator," aka "Kane," EDGAR YERKANYAN, aka "Edo," KARINE MKRTCHYAN, and NAIRA ASTGHIK TEROUNIAN knowingly made, willfully caused to be made, and aided and abetted the making of false statements to PMC Bancorp, a mortgage lending business, namely, the execution and submission of a Uniform Residential Loan Application to PMC Bancorp for $248,000 to purchase 27033 Fairway Lane, Valencia, California, 91381, falsely stating K. YERKANYAN's employment, income, assets, bank accounts, and intent to occupy said property, for the purpose of influencing the actions of the mortgage lending business.

COUNT ONE HUNDRED AND FIFTEEN

[21 U.S.C. § 846]

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about August 15, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants PARAMAZ BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka "Parnamas Bileziktsian," aka "Bleziktsian Paramas" ("BILEZIKCHYAN"), KARO YERKANYAN, aka "Guilty," aka "Gator," aka "Kane" ("K. YERKANYAN"), SUREN TOROSYAN, aka "Suro," aka "Sunny" ("S. TOROSYAN"), OGANES TEROGANESYAN, aka "Hovo," aka "Hovik," aka "Oganes Terognesyan" ("O. TEROGANESYAN"), ARTUR GABRELYAN, aka "Rubo," aka "Art" ("GABRELYAN"), ADAM DAVOODIAN, aka "Aram" ("DAVOODIAN"), and SARKIS AVEDISIAN, aka "Sako" ("AVEDISIAN"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally possess with intent to distribute marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendants BILEZIKCHYAN, K. YERKANYAN, S. TOROSYAN, O. TEROGANESYAN, GABRELYAN, and DAVOODIAN would develop a plan to pretend to enter a marijuana partnership with defendant Arnold

1  Moradians, aka "Arno" ("Moradians"), in order to steal a load of

2  marijuana from Moradians and sell it for their own benefit.

3      2.    Defendants BILEZIKCHYAN, K. YERKANYAN, and O.

4  TEROGANESYAN would obtain keys for a truck which contained the

5  marijuana belonging to Moradians, and take the truck from its

6  place of storage.

7      3.    Defendants BILEZIKCHYAN, K. YERKANYAN, S. TOROSYAN,

8  and GABRELYAN would divide, package, and store the marijuana

9  stolen from Moradians.

10      4.    Defendant AVEDISIAN would agree to allow the stolen

11  marijuana to be stored for a time on his property.

12      5.    Defendants BILEZIKCHYAN, O. TEROGANESYAN, and

13  GABRELYAN would negotiate the sale of the stolen marijuana.

14  C.   OVERT ACTS

15      In furtherance of the conspiracy and to accomplish the

16  object of the conspiracy, defendants BILEZIKCHYAN, K. YERKANYAN,

17  S. TOROSYAN, O. TEROGANESYAN, GABRELYAN, DAVOODIAN, and

18  AVEDISIAN, and others known and unknown to the Grand Jury,

19  committed and caused to be committed various overt acts on or

20  about the following dates, within the Central District of

21  California, and elsewhere, including, but not limited to, the

22  following:

23      1.    On or about August 5, 2009, defendant BILEZIKCHYAN,

24  in a telephone conversation using coded language, discussed with

25  defendant S. TOROSYAN the fact that Moradians sells large

26  quantities of marijuana.

27

28

2.    On or about August 6, 2009, defendant BILEZIKCHYAN, in a telephone conversation using coded language, spoke with defendant DAVOODIAN and asked DAVOODIAN if he had ever purchased marijuana from defendant Moradians, and DAVOODIAN stated that he had just purchased $20,000 worth of marijuana from Moradians.

3.    On or about August 7, 2009, defendant BILEZIKCHYAN, in a telephone conversation using coded language, told Moradians that BILEZIKCHYAN would bring some people to help Moradians package his marijuana.

4.    On or about August 8, 2009, defendant GABRELYAN agreed to meet defendant BILEZIKCHYAN to help package Moradians' marijuana.

5.    On or about August 8, 2009, defendant BILEZIKCHYAN, in a telephone conversation using coded language, told Moradians that he had sent some guys to help Moradians package his marijuana.

6.    On or about August 9, 2009, defendant BILEZIKCHYAN, in a telephone conversation using coded language, told defendant O. TEROGANESYAN that BILEZIKCHYAN and defendants K. YERKANYAN and S. TOROSYAN wanted to bring narcotics to O. TEROGANESYAN's auto body shop the next day in order to package the narcotics, and O. TEROGANESYAN informed BILEZIKCHYAN that he could do so.

7.    On or about August 10, 2009, defendant BILEZIKCHYAN, in a telephone conversation using coded language, told defendant O. TEROGANESYAN that they needed a compressor hose to package the marijuana and asked O. TEROGANESYAN to cover the windows in his office so that they could package the marijuana there, and O.

1  TEROGANESYAN said they could package the marijuana at his

2  business after the auto body shop workers left for the day.

3      8.     On or about August 11, 2009, defendant BILEZIKCHYAN,

4  in a telephone conversation using coded language, discussed with

5  defendant O. TEROGANESYAN stealing the marijuana that they had

6  helped to package for Moradians.

7      9.     On or about August 11, 2009, defendant O.

8  TEROGANESYAN, in a telephone conversation using coded language,

9  spoke with defendant BILEZIKCHYAN and agreed to make a copy of

10  the keys for the truck that contained the packaged marijuana

11  belonging to Moradians.

12     10.     On or about August 11, 2009, defendant O.

13  TEROGANESYAN made or had made spare keys for the truck containing

14  the marijuana belonging to Moradians.

15     11.     On or about August 11, 2009, defendant BILEZIKCHYAN,

16  in a telephone conversation using coded language, told defendant

17  O. TEROGANESYAN that defendant K. YERKANYAN was on his way to

18  assist O. TEROGANESYAN in stealing the truck containing the

19  packaged marijuana, and BILEZIKCHYAN told O. TEROGANESYAN to

20  leave the truck abandoned somewhere after they removed the

21  marijuana; and the truck was eventually left parked on Clifton

22  Place in Glendale, California.

23     12.     On or about August 11, 2009, defendant K. YERKANYAN

24  drove away the truck which contained the marijuana.

25     13.     On or about August 11, 2009, defendant AVEDISIAN

26  agreed to hide the stolen marijuana on his property.

27

28

182

1    14.    On or about August 11, 2009, defendants BILEZIKCHYAN,

2  K. YERKANYAN, and DAVOODIAN met with Moradians and pretended that

3  K. YERKANYAN and DAVOODIAN were rival claimants to BILEZIKCHYAN

4  and Moradians for the stolen marijuana.

5    15.    On or about August 11, 2009, defendant TOROSYAN

6  provided a location for dividing and packaging the stolen

7  marijuana at his property.

8    16.    On or about August 11, 2009, defendant BILEZIKCHYAN,

9  in a telephone conversation using coded language, told defendant

10 GABRELYAN that BILEZIKCHYAN was in possession of approximately

11 207 pounds of marijuana, and that the marijuana was worth

12 $450,000.

13    17.    On or about August 11, 2009, defendant GABRELYAN took

14 samples of the stolen marijuana to offer for sale.

15    18.    On or about August 15, 2009, defendant BILEZIKCHYAN,

16 in a telephone conversation using coded language, told an

17 unindicted co-conspirator that the marijuana BILEZIKCHYAN and his

18 co-conspirators had stolen from the truck was worth $450,000,

19 that BILEZIKCHYAN and his co-conspirators divided up the money,

20 and that BILEZIKCHYAN's share was $150,000.

21

22

23

24

25

26

27

28

183

1          COUNT ONE HUNDRED AND SIXTEEN

2          [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

3          On or about August 11, 2009, in Los Angeles County, within

4   the Central District of California, and elsewhere, defendants

5   PARAMAZ BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka

6   "Parnamas Bileziktsian," aka "Bleziktsian Paramas," KARO

7   YERKANYAN, aka "Guilty," aka "Gator," aka "Kane," SUREN TOROSYAN,

8   aka "Suro," aka "Sunny," OGANES TEROGANESYAN, aka "Hovo," aka

9   "Hovik," aka "Oganes Terognesyan," ARTUR GABRELYAN, aka "Rubo,"

10  aka "Art," ADAM DAVOODIAN, aka "Aram," and SARKIS AVEDISIAN, aka

11  "Sako," knowingly and intentionally possessed with intent to

12  distribute marijuana, a schedule I controlled substance.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

184

COUNT ONE HUNDRED AND SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about August 11, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant ARNOLD MORADIANS, also known as "Arno," knowingly and intentionally possessed with intent to distribute marijuana, a schedule I controlled substance.

185

COUNT ONE HUNDRED AND EIGHTEEN

[21 U.S.C. § 846]

A.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about January 26, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper" ("H. KARAYAN"), ROMAN TEROGANESYAN, aka "Lil Boy," aka "Rome," aka "Roman Teroganesian," aka "Arthur Teroganesian" ("R. TEROGANESYAN"), ARMAN KARAYAN ("A. KARAYAN"), JACK GAMBARYAN, aka "Zhak Gambarian," aka "Speedy" ("GAMBARYAN"), GRIGOR GARIBYAN, aka "Gokor" ("GARIBYAN"), ARAM KHACHATRYAN ("A. KHACHATRYAN"), ZHIRAYR KARAYAN, aka "Zhiro," aka "Jerry" ("Z. KARAYAN"), ARSEN AYRANJIAN ("AYRANJIAN"), and HOVANNES IGARIAN, aka "Hovo" ("IGARIAN"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally manufacture, and possess with intent to distribute, at least 1,000 marijuana plants, a schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vii).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendants H. KARAYAN, A. KARAYAN, and Z. KARAYAN would establish and maintain several marijuana growing sites in or around January 2010.

186

1       2.     Defendant A. KARAYAN would maintain a marijuana

2 growing site at his residence at 12451 Daryl Avenue, in Granada

3 Hills, California.

4       3.     Defendant H. KARAYAN would maintain a marijuana

5 growing site at his residence at 18536 Brasilia Drive, in Porter

6 Ranch, California.

7       4.     Defendants H. KARAYAN, GAMBARYAN, GARIBYAN, A.

8 KHACHATRYAN, Z. KARAYAN, and IGARIAN would obtain an additional

9 location to be used to grow marijuana plants.

10      5.     Defendants H. KARAYAN, GAMBARYAN, GARIBYAN, A.

11 KHACHATRYAN, Z. KARAYAN, and IGARIAN would construct and equip a

12 facility that would enable them to grow large numbers of

13 marijuana plants.

14      6.     Defendants H. KARAYAN, GAMBARYAN, GARIBYAN, A.

15 KHACHATRYAN, Z. KARAYAN, and IGARIAN would grow a large number of

16 marijuana plants at the marijuana growing facility they

17 constructed.

18      7.     Defendants R. TEROGANESYAN and AYRANJIAN would assist

19 defendant H. KARAYAN in maintaining and expanding his marijuana

20 growing sites.

21 C.    OVERT ACTS

22      In furtherance of the conspiracy and to accomplish the

23 objects of the conspiracy, defendants H. KARAYAN, R.

24 TEROGANESYAN, A. KARAYAN, GAMBARYAN, GARIBYAN, A. KHACHATRYAN, Z.

25 KARAYAN, AYRANJIAN, and IGARIAN, and others known and unknown to

26 the Grand Jury, committed and caused to be committed various

27 overt acts on or about the following dates, within the Central

28

1  District of California, and elsewhere, including, but not limited

2  to, the following:

3      1.    In or around January 2010, defendant AYRANJIAN cared

4  for marijuana plants being grown at the marijuana facilities

5  operated by AYRANJIAN's co-conspirators.

6      2.    On or about January 15, 2010, defendants H. KARAYAN

7  and A. KARAYAN, in a telephone conversation using coded language,

8  discussed purchasing plant fertilizer for growing marijuana

9  plants.

10     3.    On or about January 16, 2010, defendant H. KARAYAN,

11 in a telephone conversation using coded language, discussed with

12 defendant Z. KARAYAN drying, packaging, and labeling marijuana.

13     4.    On or about January 17, 2010, defendant H. KARAYAN

14 told defendant Z. KARAYAN, using coded language on the telephone,

15 that Z. KARAYAN should instruct defendant AYRANJIAN to go to

16 defendant A. KARAYAN's marijuana facility, water the plants, and

17 make sure to vacuum carefully at the location.

18     5.    On or about January 21, 2010, defendant H. KARAYAN,

19 in a telephone conversation using coded language, discussed with

20 defendant GAMBARYAN looking for another marijuana grow location.

21     6.    On or about January 26, 2010, defendant H. KARAYAN,

22 in a telephone conversation using coded language, discussed with

23 defendants A. KARAYAN and Z. KARAYAN growing marijuana plants.

24     7.    On or about February 8, 2010, defendants H. KARAYAN

25 and R. TEROGANESYAN, in a telephone conversation using coded

26 language, discussed their marijuana grow operations, and R.

27 TEROGANESYAN said he was expanding his marijuana grow.

28

188

8.   On or about February 8, 2010, defendant H. KARAYAN, in a telephone conversation using coded language, told defendant R. TEROGANESYAN that H. KARAYAN had three marijuana grow sites operating and was opening a fourth, and that each grow site had at least 150 marijuana plants.

9.   On or about February 8, 2010, defendant R. TEROGANESYAN, in a telephone conversation using coded language, spoke with defendant H. KARAYAN, offered to hold some of H. KARAYAN's marijuana plants, and said he could fit approximately 200 of H. KARAYAN's marijuana plants at his marijuana grow location.

10.   On or about February 10, 2010, defendant A. KARAYAN maintained a marijuana growing site at his residence at 12451 Daryl Avenue, in Granada Hills, California.

11.   On or about February 10, 2010, defendant H. KARAYAN possessed approximately 2.38 kilograms of cultivated marijuana, a firearm, namely, a Beretta model 96 .40 caliber semi-automatic pistol, and ammunition, at his residence at 18536 Brasilia Drive, in Northridge, California.

12.   On or about April 26, 2010, defendant GAMBARYAN brought a propane tank and bamboo stakes to a marijuana growing facility that defendants H. KARAYAN, A. KARAYAN, GAMBARYAN, GARIBYAN, A. KHACHATRYAN, Z. KARAYAN, and IGARIAN were operating at 8239 Lankershim Boulevard, Unit D, in North Hollywood, California (the "marijuana growing facility").

189

13.   On or about April 26, 2010, defendants GAMBARYAN and GARIBYAN unloaded the propane tank and bamboo stakes into the marijuana growing facility.

14.   On or about April 26, 2010, defendant IGARIAN arrived at the marijuana growing facility in an SUV, met defendant GAMBARYAN, and the two shook hands and entered the marijuana growing facility.

15.   On or about April 26, 2010, defendant IGARIAN exited the marijuana growing facility, backed his SUV up to the door of the marijuana growing facility, and opened the rear hatch of his SUV.

16.   On or about April 26, 2010, defendant GAMBARYAN brought a black plastic bag of small marijuana plants out of the marijuana growing facility.

17.   On or about April 26, 2010, defendants GAMBARYAN and IGARIAN loaded the bag of marijuana plants into IGARIAN's SUV.

18.   On or about April 26, 2010, defendants H. KARAYAN, GARIBYAN, A. KHACHATRYAN, and Z. KARAYAN met inside the marijuana growing facility.

19.   On or about April 26, 2010, defendants GAMBARYAN, A. KHACHATRYAN, and Z. KARAYAN each possessed on his person a key to the door of the marijuana growing facility.

20.   On or about April 26, 2010, defendants H. KARAYAN, A. KARAYAN, GAMBARYAN, GARIBYAN, A. KHACHATRYAN, Z. KARAYAN, and IGARIAN possessed approximately 567 marijuana plants, as well as equipment used to grow marijuana, including one-gallon and five-gallon pots containing potting soil, high wattage overhead light

bulbs with reflector shades, air conditioning units, dehumidifier
units, fans, carbon filter systems, watering tubs, a submersible
pump, and a carbon dioxide generator attached to a propane tank,
all inside the marijuana growing facility.

191

1          COUNT ONE HUNDRED AND NINETEEN

2        [21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii)]

3          On or about April 26, 2010, in Los Angeles County, within

4    the Central District of California, and elsewhere, defendants

5    HAYK KARAYAN, also known as ("aka") "Hayko," aka "Whisper," ARMAN

6    KARAYAN, JACK GAMBARYAN, aka "Zhak Gambarian," aka "Speedy,"

7    GRIGOR GARIBYAN, aka "Gokor," ARAM KHACHATRYAN, ZHIRAYR KARAYAN,

8    aka "Zhiro," aka "Jerry," ARSEN AYRANJIAN, and HOVANNES IGARIAN,

9    aka "Hovo," knowingly and intentionally manufactured and

10   possessed with the intent to distribute at least 100 marijuana

11   plants, that is, approximately 567 marijuana plants, a schedule I

12   controlled substance.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND TWENTY

[18 U.S.C. § 1029(a)(3)]

On or about September 3, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANDRANIK ALOYAN, also known as ("aka") "Andy," aka "Ando," knowingly and with intent to defraud possessed fifteen or more unauthorized access devices, as defined in Title 18, United States Code, Sections 1029(e)(1) and (3), namely, approximately 47 credit card account numbers and bank account numbers in the names of other persons, with said possession affecting interstate and foreign commerce.

1
COUNT ONE HUNDRED AND TWENTY-ONE

2
[18 U.S.C. § 1028A(a)(1)]

3
On or about September 3, 2010, in Los Angeles County, within

4
the Central District of California, and elsewhere, defendant

5
ANDRANIK ALOYAN, also known as ("aka") "Andy," aka "Ando,"

6
together with others known and unknown to the Grand Jury,

7
knowingly transferred, possessed, and used, without lawful

8
authority, a means of identification of another person, that is,

9
the names and account numbers of victims A.A. and K.K., during

10
and in relation to Access Device Fraud, a felony violation of

11
Title 18, United States Code, Section 1029(a)(3), as charged in

12
Count One Hundred and Twenty of this Indictment.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND TWENTY-TWO

[18 U.S.C. §§ 1028(a)(7), 2]

On or about September 3, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANDRANIK BAKHCHADJIAN, also known as ("aka") "Ando," aka "Andranik Bakhcadjian," together with others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, as defined in Title 18, United States Code, Section 1028(d)(7), with the intent to commit, to aid and abet, and in connection with, unlawful activity constituting a violation of Federal law and a felony under any applicable State and local law, including, but not limited to, Bank Fraud, in violation of Title 18, United States Code, Section 1344, and Access Device Fraud, in violation of Title 18, United States Code, Section 1029, with said transfer, possession, and use affecting interstate and foreign commerce.

1

COUNT ONE HUNDRED AND TWENTY-THREE

2

[18 U.S.C. §§ 1955, 2]

3       Beginning on a date unknown to the Grand Jury, but no later

4  than on or about December 28, 2009, and continuing through on or

5  about January 26, 2011, in Los Angeles County, within the Central

6  District of California, and elsewhere, defendants PARAMAZ

7  BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka

8  "Parnamas Bileziktsian," aka "Bleziktsian Paramas," HAYK KARAYAN,

9  aka "Hayko," aka "Whisper," ROMAN TEROGANESYAN, aka "Lil Boy,"

10  aka "Rome," aka "Roman Teroganesian," aka "Arthur Teroganesian,"

11  and JACK GAMBARYAN, aka "Zhak Gambarian," aka "Speedy," while

12  aiding and abetting each other, and together with others known

13  and unknown to the Grand Jury, knowingly conducted, financed,

14  managed, supervised, directed, and owned, and willfully caused to

15  be conducted, financed, managed, supervised, directed, and owned,

16  all or part of an illegal gambling business, in violation of the

17  laws of the State of California and the Municipal Code for the

18  City of Los Angeles.

19

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND TWENTY-FOUR

[18 U.S.C. § 922(g)(1)]

On or about August 20, 2009, in Los Angeles County, within the Central District of California, defendant HARUT TOROSYAN, also known as ("aka") "Menace," aka "Harout Torosyan" ("H. TOROSYAN"), knowingly possessed a firearm, namely, a Springfield Armory model XD .45 caliber handgun, bearing serial number US690631, and ammunition, namely, two rounds of Remington .45 caliber ammunition, and one round of Winchester .45 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant H. TOROSYAN had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)     Manufacture, Sale, or Possession of a Dangerous Weapon, in violation of California Penal Code Section 12020(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number GA05306301, on or about June 11, 2003;

(2)     Taking Identity of Another Person, in violation of Arizona Revised Statutes Section 13-2008, in the Superior Court of the State of Arizona for Maricopa County, case number CR 2006-030210, on or about February 16, 2007.

1

COUNT ONE HUNDRED AND TWENTY-FIVE

2

[18 U.S.C. § 922(g)(1)]

3       On or about November 23, 2009, in Los Angeles County, within

4   the Central District of California, defendant MIGUEL AGUSTIN

5   RAMIREZ, also known as ("aka") "Mugsy," aka "Mugs" ("RAMIREZ"),

6   knowingly possessed firearms, namely, a Smith & Wesson model 638-

7   2 .38 caliber revolver, bearing serial number CCH2705, a Star

8   model 30M 9 millimeter caliber semi-automatic pistol, bearing

9   serial number 1885728, and an Intratec model Tec-22 .22 caliber

10  semi-automatic pistol, bearing serial number 36039; and

11  ammunition, namely, eleven rounds of Federal .22 caliber

12  ammunition, in and affecting interstate and foreign commerce.

13      Such possession occurred after defendant RAMIREZ had been

14  convicted of at least one of the following felony crimes, each

15  punishable by a term of imprisonment exceeding one year:

16      (1)   Possession of a Controlled Substance, in violation of

17  California Health and Safety Code Section 11350(A), in the

18  Superior Court of the State of California, County of Los Angeles,

19  case number BA094160, on or about April 28, 1994;

20      (2)   Felon in Possession of a Firearm, in violation of

21  California Penal Code Section 12021(A)(1), in the Superior Court

22  of the State of California, County of Los Angeles, case number

23  BA099431, on or about September 27, 1994;

24      (3)   Transportation or Sale of a Controlled Substance, in

25  violation of California Health and Safety Code Section 11352(A),

26  in the Superior Court of the State of California, County of Los

27  Angeles, case number BA29192303, on or about December 15, 2006;

28

1     (4)    Transportation of a Controlled Substance, in

2  violation of California Health and Safety Code Section 11379, in

3  the Superior Court of the State of California, County of Los

4  Angeles, case number BA29192303, on or about December 15, 2006;

5     (5)    Use of a Fake Compartment to Transport a Controlled

6  Substance, in violation of California Health and Safety Code

7  Section 11366.8(A), in the Superior Court of the State of

8  California, County of Los Angeles, case number BA29192302, on or

9  about December 15, 2006;

10    (6)    Felon in Possession of a Firearm, in violation of

11 California Penal Code Section 12021(A)(1), in the Superior Court

12 of the State of California, County of Los Angeles, case number

13 BA29192303, on or about December 15, 2006.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND TWENTY-SIX

[18 U.S.C. §§ 922(g)(1), 2]

On or about November 24, 2009, in Los Angeles County, within the Central District of California, defendants MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher" ("DARBINYAN"), and SOUREN SEROBYAN, aka "Suro" ("SEROBYAN"), knowingly possessed firearms, namely, a Smith & Wesson model 638-2 .38 caliber revolver, bearing serial number CCH2705, a Star model 30M 9 millimeter caliber semi-automatic pistol, bearing serial number 1885728, and an Intratec model Tec-22 .22 caliber semi-automatic pistol, bearing serial number 36039; and ammunition, namely, eleven rounds of Federal .22 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant DARBINYAN had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)    Robbery, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Los Angeles, case number LA027917, on or about July 21, 1998;

(2)    Three Counts of Theft by a Forged or Invalid Credit Card with a Prior Felony Conviction, in violation of California Penal Code Section 484G(A), in the Superior Court of the State of California, County of Los Angeles, case number SA054286, on or about March 18, 2005.

///

1    Such possession occurred after defendant SEROBYAN had been

2   convicted of a felony punishable by a term of imprisonment

3   exceeding one year, namely:   Three Counts of Taking the Identity

4   of Another, in violation of Arizona Penal Code Section 13-2008A,

5   in the Superior Court of the State of Arizona for Maricopa

6   County, case number CR2006030210001SE, on or about October 6,

7   2006.

8    At the above time and place, defendant GEVORK KASABYAN, aka

9   "Kash," aided, abetted, counseled, commanded, induced, and

10   procured the commission of the offense alleged above.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

201

COUNT ONE HUNDRED AND TWENTY-SEVEN

[18 U.S.C. §§ 922(g)(1), 2]

On or about December 1, 2009, in Los Angeles County, within the Central District of California, defendant MHER DARBINYAN, also known as ("aka") "Mike," aka "Hollywood Mike," aka "Little Mike," aka "Capone," aka "Caps," aka "Maher" ("DARBINYAN"), knowingly possessed a firearm, namely, an Omega Arms model Omega III 30-06 caliber bolt action rifle, bearing serial number 549, in and affecting interstate and foreign commerce.

Such possession occurred after defendant DARBINYAN had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)  Robbery, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Los Angeles, case number LA027917, on or about July 21, 1998;

(2)  Three Counts of Theft by a Forged or Invalid Credit Card with a Prior Felony Conviction, in violation of California Penal Code Section 484G(A), in the Superior Court of the State of California, County of Los Angeles, case number SA054286, on or about March 18, 2005.

At the above time and place, defendant ARTUR PEMBEJIAN, aka "Cham," aided, abetted, counseled, commanded, induced, and procured the commission of the offense alleged above.

COUNT ONE HUNDRED AND TWENTY-EIGHT

[18 U.S.C. § 922(g)(1)]

On or about December 30, 2009, in Los Angeles County, within the Central District of California, defendants PARAMAZ BILEZIKCHYAN, also known as ("aka") "Parik," aka "P," aka "Parnamas Bileziktsian," aka "Bleziktsian Paramas" ("BILEZIKCHYAN"), and RAFAEL GONZALEZ-MUNOZ JR., aka "Cisco," aka "the Drink" ("GONZALEZ-MUNOZ JR."), knowingly possessed ammunition, namely, 35 rounds of Federal .45 caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant BILEZIKCHYAN had been convicted of at least one of the following felony crimes, punishable by a term of imprisonment exceeding one year:

(1)    Two Counts of Robbery with Use of a Firearm, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of San Diego, case number SD102276, on or about September 2, 1994;

(2)    First Degree Burglary with Use of a Firearm, in violation of California Penal Code Section 459, in the Superior Court of the State of California, County of San Diego, case number SD102276 (Count 3), on or about September 2, 1994;

(3)    False Imprisonment with Use of a Firearm, in violation of California Penal Code Sections 236, 237, in the Superior Court of the State of California, County of San Diego, case number SD102276 (Count 4), on or about September 2, 1994;

(4)    Robbery with Use of a Firearm, in violation of California Penal Code Section 211, in the Superior Court of the

203

1  State of California, County of Riverside, case number ICR18906,

2  on or about March 28, 1995;

3     (5)     Assault with Firearm on a Person, in violation of

4  California Penal Code Section 245(a)(2), in the Superior Court of

5  the State of California, County of Riverside, case number

6  ICR18906, on or about March 28, 1995.

7     Such possession occurred after defendant GONZALEZ-MUNOZ JR.

8  had been convicted of at least one of the following felony

9  crimes, punishable by a term of imprisonment exceeding one year:

10     (1)     Conspiracy to Possess with Intent to Distribute a

11  Controlled Substance, in violation of 21 U.S.C. §§ 846,

12  841(a)(1), in the United States District Court for the Southern

13  District of New York, case number 90-CR-0015-RPP-11, on or about

14  March 7, 1990;

15     (2)     Possession of a Controlled Substance for Sale, in

16  violation of California Health and Safety Code Section 11378, in

17  the Superior Court of the State of California, County of Los

18  Angeles, case number XEAKA04736101, on or about May 23, 2002;

19     (3)     Assault with a Dangerous Weapon in Aid of

20  Racketeering, in violation of 18 U.S.C. § 1959(a)(3), in the

21  United States District Court for the Central District of

22  California, case number CR 02-938-DOC, on or about February 7,

23  2005.

24

25

26

27

28

1                   COUNT ONE HUNDRED AND TWENTY-NINE

2                     [18 U.S.C. § 1001(a)(2)]

3       On or about December 30, 2009, in Los Angeles County, within

4 the Central District of California, in a matter within the

5 jurisdiction of the Federal Bureau of Investigation, defendant

6 MARAT SHAKHRAMANYAN ("SHAKHRAMANYAN") knowingly and willfully

7 made a false material statement and representation, in that

8 defendant SHAKHRAMANYAN told an officer with the Glendale Police

9 Department that a plastic bag containing a high-capacity gun

10 magazine and 35 rounds of .45 caliber ammunition, which the

11 officer had just found in defendant SHAKHRAMANYAN's car, might

12 have been forgotten and left in the car by one of defendant

13 SHAKHRAMANYAN's friends who had driven the car, when, in truth

14 and in fact, as defendant SHAKHRAMANYAN then and there well knew,

15 defendant SHAKHRAMANYAN had been told to pick up the gun magazine

16 and had been given directions as to where to obtain it by Paramaz

17 Bilezikchyan, also known as ("aka") "Parik," aka "P," aka

18 "Parnamas Bileziktsian," aka "Bleziktsian Paramas," to whom the

19 gun magazine belonged.

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND THIRTY

[18 U.S.C. § 922(g)(1)]

On or about January 19, 2010, in Los Angeles County, within the Central District of California, defendants EDGAR KHACHATRYAN, also known as ("aka") "Gunner", aka "Lil Gunner," aka "Edo" ("E. KHACHATRYAN"), and GRACHIA NALBANDYAN, aka "Raider," aka "Puffy," aka "Crazy" ("NALBANDYAN"), knowingly possessed firearms, namely, a Sig Sauer P220 .45 caliber semi-automatic handgun, bearing serial number G286010, and a Maadi Helwan 9 millimeter caliber handgun, bearing serial number 1128786; and ammunition, namely, six rounds of Remington .45 caliber ammunition, one round of Speer .45 caliber ammunition, one round of Pro-Load .45 caliber ammunition, four rounds of Winchester 9 millimeter caliber ammunition, and three rounds of Speer 9 millimeter caliber ammunition, in and affecting interstate and foreign commerce.

Such possession occurred after defendant E. KHACHATRYAN had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely:  Carrying a Loaded Firearm in Public, in violation of California Penal Code Section 12031(A)(1), in the Superior Court of the State of California, County of Los Angeles, case number GA068124, or about February 6, 2007.

Such possession occurred after defendant NALBANDYAN had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely:  Vandalism with a Gang Allegation, in violation of California Penal Code Section 594(A), in the

206

1    Superior Court of the State of California, County of Los Angeles,

2    case number GA070988-01, on or about October 31, 2007.

COUNT ONE HUNDRED AND THIRTY-ONE

[18 U.S.C. § 922(g)(1)]

On or about February 10, 2010, in Los Angeles County, within the Central District of California, defendant KARO YERKANYAN, also known as ("aka") "Guilty," aka "Gator," aka "Kane" ("K. YERKANYAN"), knowingly possessed a firearm, namely, a Beretta model 92FS 9 millimeter caliber semi-automatic pistol, bearing serial number BER402785Z, and ammunition, namely, six rounds of Winchester 9 millimeter caliber ammunition, two rounds of Royal Ordnance Factory - Blackpole 9 millimeter caliber ammunition, two rounds of Federal 9 millimeter caliber ammunition, one round of Wolf 9 millimeter caliber ammunition, one round of Royal Ordnance Factory - Hirwaun 9 millimeter caliber ammunition, one round of Hirtenberger Patronen 9 millimeter caliber ammunition, one round of COR-BON 9 millimeter caliber ammunition, and one round of 9 millimeter caliber ammunition marked "NPA," in and affecting interstate and foreign commerce.

Such possession occurred after defendant K. YERKANYAN had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely:  Driving with a Blood Alcohol Level above .08% Causing Bodily Injury, in violation of California Vehicle Code Section 23153(B), in the Superior Court of the State of California, County of Los Angeles, case number LAVLA04165601, on or about February 10, 2003.

1                COUNT ONE HUNDRED AND THIRTY-TWO

2                    [18 U.S.C. § 922(g)(1)]

3     On or about February 10, 2010, in Los Angeles County, within

4 the Central District of California, defendant HAYK KARAYAN, also

5 known as ("aka") "Hayko," aka "Whisper" ("H. KARAYAN"), knowingly

6 possessed a firearm, namely, a Beretta model 96 .40 caliber semi-

7 automatic pistol, with an obliterated serial number, and

8 ammunition, namely, thirteen rounds of Federal .40 caliber

9 ammunition, and one round of Remington .40 caliber ammunition, in

10 and affecting interstate and foreign commerce.

11     Such possession occurred after defendant H. KARAYAN had been

12 convicted of a felony punishable by a term of imprisonment

13 exceeding one year, namely: Assault with a Firearm on a Person,

14 in violation of California Penal Code Section 245(a), in the

15 Superior Court of the State of California, County of Los Angeles,

16 case number GA053647, on or about May 13, 2005.

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE HUNDRED AND THIRTY-THREE

[18 U.S.C. § 922(g)(1)]

On or about September 3, 2010, in Los Angeles County, within the Central District of California, defendant ANDRANIK ALOYAN, also known as ("aka") "Andy," aka "Ando" ("ALOYAN"), knowingly possessed a firearm, namely, a Llama .22 caliber pistol, bearing serial number 658698, in and affecting interstate and foreign commerce.

Such possession occurred after defendant ALOYAN had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely: Possession of a Pistol with a Removed Serial Number, in violation of California Penal Code Section 12031, in the Superior Court of the State of California, County of Los Angeles, Case Number LA064010, on or about February 22, 2010.

1                 COUNT ONE HUNDRED AND THIRTY-FOUR

2                   [18 U.S.C. § 922(g)(1)]

3      On or about September 3, 2010, in Los Angeles County, within

4 the Central District of California, defendant ANDRANIK

5 BAKHCHADJIAN, also known as ("aka") "Ando," aka "Andranik

6 Bakhcadjian" ("BAKHCHADJIAN"), knowingly possessed a firearm,

7 namely, a Llama .45 caliber pistol, bearing serial number B95369,

8 in and affecting interstate and foreign commerce.

9      Such possession occurred after defendant BAKHCHADJIAN had

10 been convicted of at least one of the following felony crimes,

11 punishable by a term of imprisonment exceeding one year:

12      (1)     Forgery/Access Card Theft, in violation of California

13 Penal Code Section 484f, in the Superior Court of the State of

14 California, County of Los Angeles, Case Number PA04795701, on or

15 about August 24, 2005;

16      (2)     Theft of Access Cards, in violation of California

17 Penal Code Section 484e, in the Superior Court of the State of

18 California, County of Los Angeles, Case Number PA04795701, on or

19 about August 24, 2005;

20      (3)     Vehicular Manslaughter, in violation of California

21 Penal Code Section 192, in the Superior Court of the State of

22 California, County of Los Angeles, Case Number PA04795701, on or

23 about August 24, 2005;

24      (4)     Receiving Stolen Property, in violation of California

25 Penal Code Section 496, in the Superior Court of the State of

26 California, County of Los Angeles, Case Number LA06039101, on or

27 about January 22, 2009;

28

1    (5)    Receiving Stolen Property, in violation of California

2  Penal Code Section 496, in the Superior Court of the State of

3  California, County of Los Angeles, Case Number LA06001, on or

4  about January 22, 2009.

5

6                              A TRUE BILL

7                              /S/

8                              _____
                              Foreperson

9

10  ANDRÉ BIROTTE JR.
   United States Attorney

11

12

13  ROBERT E. DUGDALE
   Assistant United States Attorney

14  Chief, Criminal Division

15

16  ELIZABETH R. YANG
   Assistant United States Attorney

17  Chief, Violent & Organized Crime Section

18  E. MARTIN ESTRADA
   SARAH LEVITT

19  STEPHEN G. WOLFE
   Assistant United States Attorneys

20  Violent & Organized Crime Section

21

22  CRISTINA MORENO
   Department of Justice Trial Attorney
   Organized Crime and Racketeering Section

23

24

25

26

27

28
                              212